UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOSHIA DANIELS BURTON,** Individually and as the Personal Representative of the Estate of **SAMUEL L. BURTON, Deceased,** 5 Hickory Knoll Court Lutherville, MD  21093 | ) ) ) ) ) ) ) |
| - and - | ) ) |
| **DEIDRE BURTON CRANDELL,** as the Natural Daughter of **SAMUEL L. BURTON, Deceased,** 17350 SW 106th Court Tualatin, OR  97062 | ) ) ) ) ) ) |
| - and - | ) ) |
| **DERRICK BURTON, as the Natural Son of SAMUEL L. BURTON, Deceased,** 270 Gatsby Place Alpharetta, GA  30022 | ) ) ) ) ) ) |
| - and - | ) ) |
| **DERON BURTON, as the Natural Son of SAMUEL L. BURTON, Deceased,** 1634 Ponce de Leon Avenue, NE Apartment #307 Atlanta, GA  30307 | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| **UNITED STATES OF AMERICA** | ) ) |

| | |
|---|---|
| **Serve:** | ) |
| | ) |
| **Kenneth L. Wainstein** | ) |
| **United States Attorney for the** | ) |
| **  District of Columbia** | ) |
| **555 – 4th Street, N.W.** | ) |
| **Washington, DC  20530** | ) |
| | ) |
| **- and -** | ) |
| | ) |
| **Hon. Alberto R. Gonzales** | ) |
| **Attorney General of the** | ) |
| **  United States** | ) |
| **U.S. Department of Justice** | ) |
| **950 Pennsylvania Avenue, NW** | ) |
| **Washington, DC  20530** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT FOR
## WRONGFUL DEATH AND SURVIVAL ACTION

### I.  JURISDICTION

1.     Jurisdiction is based on 28 U.S.C. § 1346(b)(1); the United States is the defendant in this civil action and the claim is brought under the Federal Tort Claims Act ("FTCA").  An administrative claim, as amended, was filed on February 8, 2005 with Walter Reed Army Medical Center's ("WRAMC") Office of the Center Judge Advocate.  More than six (6) months have passed since the filing of the claim.  The subject claim has been left without action by the responsible federal agency for more than six (6) months.

## II.  VENUE

2.      Venue is proper under 28 U.S.C. § 1402 in that the negligence complained of occurred at WRAMC, located in the District of Columbia.

## III.  PARTIES

3.      Plaintiff Doshia Daniels Burton is the widow of the late Samuel Burton to whom she was married for forty (40) years.  She is also the executor of his Estate.  Plaintiff Doshia Daniels Burton brings this action in her capacity was executor of her late husband's Estate and on her own behalf under the Maryland Wrongful Death Act (C.A. § 3-902 of the Md. Code).  Each of the beneficiaries named in Paragraph 4, below, bring this action for wrongful death under the Maryland Wrongful Death Act.  Moreover, plaintiff Doshia Daniels Burton brings a survival action on behalf of her husband's Estate under Trust & Estates § 7-401 of the Maryland Code, should the Court find that the law of Maryland is the correct choice of damages law.  Should the Court determine that District of Columbia law is the appropriate choice of law for damages, plaintiff Doshia Daniels Burton brings this Wrongful Death and Survival Action under D.C. Code §§ 16-2701-*et seq.* and 12-101-*et seq.*, respectively.

4.      Plaintiffs Deidre Burton Crandell, Derrick Burton and Deron Burton are the children of the decedent and are statutory beneficiaries under the Maryland Wrongful Death and the D.C. Wrongful Death Acts.

5.      Defendant United States of America is named in its capacity as the employer of the employees and agents at the federal agency, WRAMC, whose

employees and agents, acting within the scope of their employment, caused plaintiffs' decedent's injury and subsequent death.

## IV.   FACTS COMMON TO ALL COUNTS

6. Plaintiffs incorporate and reallege paragraphs 1 through 5, above, as if fully set forth herein.

7. Plaintiffs' decedent, Captain Samuel Burton, was a 62-year-old retired United States Coast Guard career officer in excellent health.

8. On January 10, 2003 Capt. Burton injured his left leg while playing basketball.

9. Capt. Burton went to the WRAMC emergency department where it was determined that he had suffered a rupture of his left Achilles tendon.

10. His left leg was put into a splint and Capt. Burton was told to avoid putting weight on his left leg and to return to the Orthopedic Clinic at WRAMC on January 15, 2003.

11. Capt. Burton returned to the WRAMC Orthopedic Clinic on January 15, 2003 and his leg was placed in a cast.

12. Moreover, during the January 15th visit, it was observed and noted that he had "moderately increased swelling" [of his leg].

13. At the time the cast was placed on his leg on January 15th, Capt. Burton was told that the plan was to immobilize his leg in the cast for six (6) weeks and he was instructed to return for follow-up in three (3) weeks.

14. Capt. Burton returned to the WRAMC Orthopedic Clinic on February 7, 2003 at which time it was observed that he had swelling around his ankle which was described as "2+ peri-ankle non-pitting edema."

15. During the February 7, 2003 visit, a new cast was put on Capt. Burton's leg and he was instructed not to put any weight on the leg for two (2) more weeks.

16. Capt. Burton faithfully followed his physicians' instructions, remained immobile and non-weight bearing and was waited on hand-and-foot by his wife for a total period of about six (6) weeks after his initial injury.

17. On February 20, 2003 Capt. Burton collapsed while at his home in Lutherville, Maryland, and was pronounced dead by paramedics.

18. The Maryland medical examiner determined the cause of death to be a pulmonary embolism, *i.e.*, blood clots had formed in the deep veins (deep vein thrombosis or "DVT") in his injured leg, had traveled to his lungs and blocked the flow of blood to his lungs, killing him.

19. Prior to Capt. Burton's death, it had been widely published in the medical literature that persons immobilized in casts on their legs for long periods of time were at a greatly increased risk of developing blood clots in their legs which could migrate to their lungs and kill them.

20. To prevent persons from dying from the blood clots, several preventative measures were recommended which included advising the patient and his/her caregiver(s) of the signs and symptoms of blood clots in the deep

veins of the legs where the clots usually form. These signs and symptoms include swelling of the affected leg, chest pain and shortness of breath.

21. Moreover, it was recommended that blood clot-preventing drugs be administered to prevent blood clots from forming.

22. It was also well known that persons suffering from a traumatic orthopedic injury, such as the ruptured Achilles tendon suffered by Capt. Burton, whose legs were immobilized in casts for long periods of time were at high risk for developing DVT.

23. Additionally, Capt. Burton's medical records, which were available to defendant, through its employees and agents at WRAMC who rendered care to him, contained historical information indicative that his health care providers suspected that he had developed blood clots in his legs after a 1997 transcontinental airplane trip.

24. Neither Capt. Burton nor his wife was advised of the signs and symptoms of blood clots in the deep veins of the legs (DVT).

25. At the time of Capt. Burton's initial injury, the risk of developing DVT had been reported to be over fifty (50) percent in trauma patients with orthopedic injuries.

26. No preventative measures were taken to prevent Capt. Burton's DVT before it became life-threatening and no tests or other methods of detecting any such clots were performed.

27. Neither Capt. Burton nor his wife were advised that he was at high risk for developing life-threatening DVTs although he had the following documented risk factors for developing DVTs:

    a.    Recent plaster [cast] immobilization of the lower extremities;

    b.    Recently bedridden for greater than three (3) days;

    c.    Entire leg swelling;

    d.    Pitting edema greater in the symptomatic leg; and

    e.    Previous DVT documented.

28. Defendant, through the employees and agents at WRAMC caring for Capt. Burton, failed to perform tests such as the test for the presence of the Homan's sign which are designed to diagnose DVT.

29. The Chief of the Orthopedic Surgery Service at WRAMC believed that the risk of pulmonary embolism was small in patients such as Capt. Burton.

30. On February 20, 2003 Capt. Burton died of an undiagnosed and untreated pulmonary embolism which most likely migrated from the calf of his left leg to his lungs.

## V.  COUNT I – WRONGFUL DEATH

31. Plaintiffs incorporate and reallege paragraphs 1-30, above, as if fully set forth herein.

32. At all times relevant hereto, defendant, acting through its employees and agents at WRAMC, owed a duty to possess and exercise that degree of skill, care and knowledge required of doctors and other such employees acting in the same or similar circumstances.

33. Between January 15, 2003 and February 20, 2003 defendant, acting through its employees and agents at WRAMC, was negligent and failed to fulfill the applicable standard of care in at least the following particulars:

    a. Failed to possess the knowledge that persons who suffered orthopedic trauma to their leg who had recent plaster [cast] immobilization of their leg, had been bedridden for greater than three (3) days, had swelling of the entire leg and pitting edema of the affected leg, along with a history of prior DVT, were at high risk for DVT and resulting pulmonary embolus which could be fatal;

    b. Failed to advise Capt. Burton or his wife of the signs and symptoms of DVT or the dangers of DVT;

    c. Failed to perform a proper physical examination and proper tests to diagnose DVT;

    d. Failed to recognize the signs and symptoms of DVT manifested by Capt. Burton during the January 15, 2003 and February 7, 2003 visits to the WRAMC Orthopedic Clinic; and

    e. Failed to prescribe blood clot-preventing drugs or take other measures to prevent a fatal embolism (clot) from migrating to his lungs.

34. As a direct and proximate result of the foregoing violations of the standard of care by the defendant, through its employees and agents at WRAMC, Capt. Burton died a needless death and the conduct of defendant's employees and agents was a substantial factor in causing his death.

35.    As a direct result of the foregoing negligence of WRAMC's employees and agents, each of the named Wrongful Death beneficiaries suffered loss of services and other damages allowed by the applicable Wrongful Death Act.

36.    WHEREFORE, plaintiffs demand judgment against defendant in the amount set forth in paragraph 42, below.

### VI.  COUNT TWO – SURVIVAL ACTION ON BEHALF OF CAPTAIN BURTON'S ESTATE

37.    Plaintiffs incorporate and reallege paragraphs 1-36, above, as if fully set forth herein.

38.    As a direct and proximate result of the above-described negligence of the defendant's employees and agents at WRAMC, plaintiffs' decedent suffered conscious pain and suffering, mental anguish, inconvenience and discomfort between the time of his initial injury and the time of his death.

39.    In addition, Capt. Burton's Estate suffered economic loss occasioned by the loss of his military pension, future earnings and other economic losses.

40.    WHEREFORE, plaintiffs demand judgment against defendant in the amount set forth in paragraph 42, below.

### VII.  AD DAMNUM

41.    Plaintiffs incorporate and reallege paragraphs 1-40, above, as if fully set forth herein.

42.   WHEREFORE, plaintiffs demand judgment against defendant in the amount of Two Million Dollars ($2,000,000.00) for the wrongful death of Capt. Samuel L. Burton and in the amount of Two Million Dollars ($2,000,000.00) under the Survival Act.

Respectfully submitted,

THE EATON LAW FIRM, PLLC


By:_____
    Allen T. Eaton
    La'Vern D. Wiley

1111 – 14th Street, N.W.
Suite 777
Washington, DC  20005
(202) 637-0921

Counsel for Plaintiffs