UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOSHIA DANIELS BURTON, *et al.*,   )
                                   )
      **Plaintiffs,**              )
                                   )
      v.                         )   Civil Action No. 05-2214 (JGP)
                                   )
UNITED STATES OF AMERICA,          )
                                   )
      **Defendant.**              )

## JOINT STATEMENT[1]

<u>Brief Statement of Case and Plaintiffs' Claims</u>:

    This is a wrongful death/survival case brought by Doshia Daniels Burton and her adult children as a result of the death of her husband/their father, Captain Samuel Burton, who was a 62-year-old retired United States Coast Guard career officer in excellent health at the time of his death.

    On January 10, 2003 Capt. Burton injured his left leg while playing basketball. Capt. Burton went to the WRAMC emergency department where it was determined that he had suffered a rupture of his left Achilles tendon. His left leg was put into a splint and Capt. Burton was told to avoid putting weight on his left leg and to return to the Orthopedic Clinic at WRAMC on January 15, 2003.

    Capt. Burton returned to the WRAMC Orthopedic Clinic on January 15, 2003 and his leg was placed in a cast. During the January 15th visit, it was observed and noted that he had "moderately increased swelling" [of his leg]. At the time the cast was placed on his leg on January 15th, Capt. Burton was told

---

[1] Plaintiffs' counsel attempted to contact counsel for the United States but was unable to speak with him regarding his position will respect to the Court's Order and the submission of the instant Joint Statement.

that the plan was to immobilize his leg in the cast for six (6) weeks and he was instructed to return for follow-up in three (3) weeks.

Capt. Burton returned to the WRAMC Orthopedic Clinic on February 7, 2003 at which time it was observed that he had swelling around his ankle which was described as "2+ peri-ankle non-pitting edema." During the February 7, 2003 visit, a new cast was put on Capt. Burton's leg and he was instructed not to put any weight on the leg for two (2) more weeks.

Capt. Burton faithfully followed his physicians' instructions, remained immobile and non-weight bearing and was waited on hand-and-foot by his wife for a total period of about six (6) weeks after his initial injury.

On February 20, 2003 Capt. Burton collapsed while at his home in Lutherville, Maryland, and was pronounced dead by paramedics. The Maryland medical examiner determined the cause of death to be a pulmonary embolism, *i.e.*, blood clots had formed in the deep veins (deep vein thrombosis or "DVT") in his injured leg, had traveled to his lungs and blocked the flow of blood to his lungs, killing him.

Prior to Capt. Burton's death, it had been widely published in the medical literature that persons immobilized in casts on their legs for long periods of time were at a greatly increased risk of developing blood clots in their legs which could migrate to their lungs and kill them. To prevent persons from dying from the blood clots, several preventative measures were recommended which included advising the patient and his/her caregiver(s) of the signs and symptoms of blood clots in the deep veins of the legs where the clots usually form. These signs and symptoms include swelling of the affected leg, chest pain and

shortness of breath.  Moreover, it was recommended that blood clot-preventing drugs be administered to prevent blood clots from forming.

It was also well known that persons suffering from a traumatic orthopedic injury, such as the ruptured Achilles tendon suffered by Capt. Burton, whose legs were immobilized in casts for long periods of time were at high risk for developing DVT.  Additionally, Capt. Burton's medical records, which were available to defendant, through its employees and agents at WRAMC who rendered care to him, contained historical information indicative that his health care providers suspected that he had developed blood clots in his legs after a 1997 transcontinental airplane trip.

Neither Capt. Burton nor his wife were advised of the signs and symptoms of blood clots in the deep veins of the legs (DVT).

At the time of Capt. Burton's initial injury, the risk of developing DVT had been reported to be over fifty (50) percent in trauma patients with orthopedic injuries.  No preventative measures were taken to prevent Capt. Burton's DVT before it became life-threatening and no tests or other methods of detecting any such clots were performed.

Neither Capt. Burton nor his wife were advised that he was at high risk for developing life-threatening DVTs although he had the following documented risk factors for developing DVTs:

        a.      Recent plaster [cast] immobilization of the lower extremities;

        b.      Recently bedridden for greater than three (3) days;

        c.      Entire leg swelling;

        d.      Pitting edema greater in the symptomatic leg; and

    e. Previous DVT documented.

 Defendant, through the employees and agents at WRAMC caring for Capt. Burton, failed to perform tests such as the test for the presence of the Homan's sign which are designed to diagnose DVT. In fact, the Chief of the Orthopedic Surgery Service at WRAMC believed that the risk of pulmonary embolism was small in patients such as Capt. Burton.

<u>Pending Motions</u>: None.

<u>Anticipated Amendments</u>: None.

<u>Assignment to Magistrate Judge</u>: Plaintiffs do not agree to this case being assigned to a Magistrate Judge.

<u>Realistic Possibility of Settlement</u>: Plaintiffs are more than willing to discuss settlement and believe that this case can benefit from the Court's ADR procedures.

<u>Resolved on Summary Judgment/Motion to Dismiss</u>: Plaintiffs do not believe there are any issues in the instant matter which would be resolved by a summary judgment motion or a motion to dismiss.

<u>Exchange of Information</u>: Plaintiffs have already provided defendant with copies of medical records, the autopsy report, relevant medical literature and economic reports setting forth the losses occasioned by Capt. Burton's death when filing their claim with Walter Reed Army Medical Center.

Anticipated Discovery:  Plaintiffs will need to depose the persons who rendered care to Capt. Burton at Walter Reed.  In addition, a 30(b)(6) deposition may be necessary to obtain the information known by and available to Defendant prior to Capt. Burton's death.  Plaintiffs do not believe that a protective order will be required.

Exchange of Expert Witness Information:  Plaintiffs can make their experts available within thirty (30) days after the completion of the necessary fact discovery.

Bifurcated Trial:  Plaintiffs do not believe this case will need to be bifurcated or managed in phases.

Pretrial Conference/Trial Date:  Plaintiffs believe that discovery can be accomplished in seven (7) months and that the pretrial/trial can take place in early 2007.

                Respectfully submitted,

                THE EATON LAW FIRM, PLLC

                By:_____
                   Allen T. Eaton
                   La'Vern D. Wiley

                1111 – 14th Street, N.W.
                Suite 777
                Washington, DC  20005
                (202) 637-0921

                Counsel for Plaintiffs