**EXPERT WITNESS REPORT**
**PURSUANT TO FRCP 26(b)(2)**

At trial, the undersigned has agreed to be an expert witness in the matter of _Burton v. U.S.A._ arising out of the treatment rendered to Capt. Samuel Burton at the Walter Reed Army Medical Center in 2003.

## I.     OPINIONS

I am prepared to testify to a reasonable degree of medical certainty as follows:

1.     Capt. Burton was at a moderate to high risk for developing deep vein thrombosis (DVT) and potentially a fatal pulmonary embolism (PE) after his Achilles tendon rupture in January 2003.  The reasons for his increased risk include that he was male, over 50 years old, had been immobilized in a non-weight-bearing cast, had a traumatic incident to rupture his Achilles tendon, and complained of increased swelling and had persistent edema at nearly 4 weeks post-injury when he sought medical attention with his surgeon.

2.     Capt. Burton suffered a PE and died on February 20, 2003 as a result of an undiagnosed left leg DVT.  Both of these diagnoses were documented on autopsy.

3.     Based upon the materials I have reviewed, Capt. Burton was attended to by his wife, Doshia Daniels Burton, who

accompanied him on most of his visits to the orthopaedic clinic at Walter Reed.

4.    Moreover, Capt. Burton had been evaluated for the possibility of a DVT in the past at Travis Air Force Base in 1997 following a transcontinental airline flight.

5.    I will testify to a reasonable degree of medical certainty that the personnel at Walter Reed caring for Capt. Burton failed to diagnose a left leg DVT which, more likely than not was present by his clinic visit on 2/7/03.  Despite his increased risk for DVT, the history and physical exam documented on that visit by the medical student were inadequate.   It also appears that the visit was very cursory, and the medical staff did not order appropriate diagnostic tests to rule out this life-threatening condition. Additionally, from the record it appears the Walter Reed personnel failed to inform Capt. Burton or his caregiver of the  importance  of  chest  pain  and  other  symptoms indicative of pulmonary embolism such as shortness of breath, coughing, etc.

6.    The cursory evaluation by the medical student, under Dr. Potter's supervision, with missed diagnosis constitutes a failure to meet the standard of care in this case.   This

missed diagnosis directly led to the fatal PE, a complication which on a more likely than not basis would have been avoided with appropriate diagnosis and treatment.

7.    It is also my opinion, to a reasonable degree of medical certainty that, but for the failure to properly assess and treat Capt. Burton, it is more likely than not that Capt. Burton would have avoided the fatal PE and survived with minimal injury.

8.    The bases for my opinions are my experience, training and education as well as the standard well-accepted medical literature.

A copy of my *curriculum vitae* is attached hereto, setting forth my qualifications and publications I have authored within the past ten (10) years. A listing of the cases in which I have testified, either via deposition or during trial, during the preceding 4 years is also enclosed.  My rate of compensation for my time involved in the review of this case and my testimony is $500/hr.

*M Baker, MD*

Margaret M. Baker, MD

Board Certified Orthopedic Surgeon