UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOSHIA DANIELS BURTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:05CV02214(JGP) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant hereby moves for summary judgment on Plaintiffs' claims pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact pertaining to the defense of contributory negligence and Defendant is entitled to judgment as a matter of law. In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities, statement of material facts not in genuine dispute, and a proposed order.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
STEVEN M. RANIERI
Special Assistant United States Attorney

Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOSHIA DANIELS BURTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:05CV02214(JGP) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.  <u>INTRODUCTION</u>**

Contributory negligence bars the Plaintiffs' recovery due to the failure of Captain Samuel Burton to seek medical intervention for chest pain and difficulty breathing.  His failure to seek medical treatment for chest pain and difficulty breathing was the substantial factor in causing his death, which was not only the direct result, but also a reasonably probable consequence of untreated chest pain and difficulty breathing.  Failure to seek treatment for chest pain and difficulty breathing is unreasonable conduct that falls below the standard to which Captain Burton should have conformed for his own protection and safety.  Thus, Defendant is entitled to Summary Judgment regarding these claims.

**II.  <u>BACKGROUND</u>**

On January 10, 2003, Captain Samuel E. Burton, a retired member of the United States Coast Guard, sought medical treatment at the Walter Reed Army Medical Center (hereinafter "Walter Reed") Emergency Department after hearing a crack and experiencing severe pain in his left heel and calf while playing basketball.  Radiographs indicated that there was no fracture and

a physical examination diagnosed Captain Burton with a ruptured Achilles tendon. The emergency room physicians requested and received a consultation with an orthopedic surgeon, Dr. Benjamin Kyle Potter, a second year resident who was on call. Dr. Potter evaluated Captain Burton and advised him of this treatment options: surgery or the less invasive "closed procedure" of immobilizing the leg in a splint followed by a cast. Captain Burton chose the less invasive approach and his leg was immobilized in a splint.

On January 15, 2003, Captain Burton returned to Walter Reed for his next appointment to have his splint changed to a cast. He was seen again by Dr. Potter, who noted appropriate tenderness and swelling located below the site of the Achilles tendon insertion, approximately 2 to 4 inches upward on the back of the ankle. Captain Burton was placed in a non-weight bearing, short leg cast as planned and told to return for a follow-up in three weeks. Doctor Potter's physical examination of Captain Burton on January 15, 2003, did not disclose sufficient pain or swelling to raise a suspicion of Deep Vein Thrombosis ("DVT"), with associated heightened risk of Pulmonary Embolism ("PE"), and trigger further diagnostic testing nor did the medical history given by Captain Burton raise the level of suspicion sufficiently to trigger additional testing. Doctor Potter did not instruct total bed rest or immobility for Captain Burton. His instructions were to avoid weight bearing on the injured leg and to elevate the leg when resting to improve circulation and reduce swelling at the site of the injury.

Doctor Potter saw Captain Burton for the last time on February 07, 2003. Dr. Potter noted that Captain Burton was experiencing increased swelling at night, which is a positive sign in these cases because it indicates that the patient has been moving the muscles and joints. Dr.

Potter noted appropriate swelling around the sight of the injury and non-pitting edema.[1] The characteristic signs of DVT, pain and swelling of the entire leg and/or thigh, were not present during the visit. The swelling at this visit was no more than would be expected for an Achilles tendon rupture at this stage of the healing process and was limited to the area surrounding the injury. Dr. Potter reiterated his instruction to Captain Burton to be non-weight bearing, but not complete immobilization, and to return in two weeks.

Captain Burton died on February 20, 2003, from a pulmonary embolism caused by his tendon injury. In a letter dated March 05, 2003, Mrs. Burton informed Walter Reed that there were several incidents that occurred during her late husband's recovery that she felt were warning signs of what she later learned to be a pulmonary embolism. For example, she related that her husband experienced chest pain that lasted for about three days for which he took ibuprofen, that he walked seven steps up a staircase to the bedroom and became absolutely winded, and that a few days later he got on his knees, pulled a small rocking chair out of the cubby hole in the closet and again became completely winded. Mrs. Burton also related that her husband was nearly completely immobile during his recovery at home, opposed to simply keeping weight off his injured leg.

The symptoms described by Mrs. Burton in the March 5, 2003 letter are some of the classic warning signs of PE: difficulty breathing and chest pain. Had Captain or Mrs. Burton called Walter Reed or their primary care provider and provided the history of the Achilles injury,

---

[1] Pitting edema can be demonstrated by applying pressure to, for example, the skin of a swollen leg, by depressing the skin with the thumb. If the pressing causes an indentation in the skin that persists for some time after the release of the pressure, the edema is referred to as "pitting" edema. With "non-pitting" edema, the indentation returns to normal almost immediately following the release of pressure. Severe pitting edema is a DVT warning sign.

cast immobilization and the symptoms described in the letter, they would have been directed to go to an emergency room as quickly as possible or to request emergency medical services and transportation by ambulance to an emergency room.

### III.  STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

### IV.  LEGAL STANDARDS

#### A.  Summary Judgment

In 1986, the Supreme Court issued three opinions that clarified the standards governing consideration of motions for summary judgment under Fed. R. Civ. P. 56.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247.  The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case.  Celotex, at 325.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of

4

evidence to support the non-moving party's case." Id. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. Matsushita, 475 U.S. at 586. Fed. R. Civ. P. 56 requires the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986). To avoid summary judgment, the Plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

In an opinion issued the same day as Celotex, the Supreme Court explained the circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . . or is not sufficiently probative . . . summary judgment may be granted . . . (T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial.'"). *See also* Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Baton v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996).

The mere existence of some factual dispute will not defeat an otherwise properly

5

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *See* Anderson, 477 U.S. at 247-248. Perhaps most significantly, the Court authorized weighing the evidence at the summary judgment stage of litigation, stating that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for a trial.'" Id. (citation omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249-250 (citations omitted). If the evidence is "merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." Id.; Matsushita, 475 U.S. at 587. Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (Matsushita at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment." Shelborne v. Runyon, 1997 WL 527352 at **3 (citing Celotex, 477 U.S. at 325).

In Celotex, the Supreme Court further instructed that the "(s)ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the

nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Celotex, 477 U.S. at 331.

    **B.**    **Contributory Negligence Bars Recovery**

The District of Columbia does not recognize different degrees of contributory negligence. Wingfield v. Peoples Drug Store, Inc., 379 A.2d 685, 687 (D.C. 1977). The rule is simply that contributory negligence bars a plaintiff's recovery. Id. The doctrine of contributory negligence operates as a defense under District of Columbia law when a party knows or by the exercise of ordinary care should have known a particular fact or circumstance and should have acted upon the fact or circumstance with reasonable care for his own safety. Weil v. Seltzer, 873 F.2d 1453, 1457 (D.C. Cir. 1989), *citing* Morrison v. MacNamara, 407 A2d 555 (D.C. 1979). In the context of a medical negligence case, the physician's superior knowledge and expertise in the subject area and the generally limited knowledge of the patient concerning the dangers associated with the illness and treatment may negate the critical elements of the defense of contributory negligence, specifically the knowledge and appreciation of the risks and dangers associated with certain medical treatments. Morrison v. MacNamara, 407 A2d 555, 567 (D.C. 1979). Contributory negligence bars a plaintiff's recovery only if the plaintiff's injury or damages are either a direct result or a reasonably probable consequence of plaintiff's own negligent act or omission. Durphy v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc., 698 A.2d 459, 466 (D.C. 1997).

In medical malpractice cases, contributory negligence is a valid defense if the patient's negligent act concurs with that of the physician and creates an unreasonable risk of improper medical treatment. Durphy, 698 A.2d at 467, *citing* Weeda v. District of Columbia, 521 A.2d

1156, 1167 (D.C. 1987). Where the patient's negligent act merely precedes that of the physician and provides the occasion for medical treatment, however, contributory negligence is not a permissible defense. Id. Where that occurs, the doctor's negligent act is considered an intervening cause which does not bar the patient from recovering. Id. Moreover, a patient's non-cooperation with the doctor's instructions after the doctor's alleged negligent act and subsequent negligence of the patient, which aggravates the injury primarily sustained at the hands of the physicians, does not discharge the physicians from liability, but only goes to mitigation of damages. Durphy, 698 A.2d at 467, citing George Washington Univ. v. Waas, 648 A.2d 178, 180 (D.C. 1994).

Contributory negligence is viewed as an aspect of the plaintiff's response to a known danger from which injury might reasonably be anticipated, and, therefore, the plaintiff's contributory negligence need not be congruent in time with the defendant's negligence. Chudson v. Ratra, 548 A.2d 172 (Md. App. 1988). In Chudson, the court held that the plaintiff's failure to seek medical assistance for the injury sued upon (spread of cancer to the point of incurability and lethality) did not merely exacerbate the injury, but directly contributed to it by precluding diagnosis and treatment at a time when the cancer was still probably curable. Id. at 182.; *see also* George Washington Univ. v. Waas, 648 A.2d 178, 180 (D.C. 1994).

To establish contributory negligence, the party asserting the defense must prove by a preponderance of the evidence that the opposing party's negligence is a substantial factor in causing his or her injury, and that the injury or damage is either a direct result or a reasonably probable consequence of the negligent act or omission. Id. The District of Columbia defines contributory negligence in terms of unreasonable conduct; that is, conduct "which falls below the

standard to which a plaintiff should conform for his or her own protection and contributes to the plaintiff's injury." Scoggins v. Jude, 419 A.2d 999, 1004 (D.C. 1980).  The standard of care for contributory negligence is the degree of care a reasonable person would take for his or her own safety.  Durphy, 698 A.2d at 465.

When courts examine a patient's possible contributory negligence, they determine whether the conduct conformed to a standard of care that a reasonable person would take to ensure his own safety.  Durphy, 698 A.2d at 465.  A patient who fails to seek help from a medical professional in a timely manner when he exhibits a medical condition that would warn a reasonable person of a health problem can show contributory negligence.  Parkins v. United States, 834 F. Supp. 569, 575 (D. Conn. 1993).  Also, patients who fail to take steps to ensure their own safety and health can act contributorily negligent.  Hall v. Carter, 825 A.2d 954, 960 (D.C. 2003).  See also Thomas v. Washington Indus. Medical Center, No. 98-1652, (4th Cir., 1999)(stating that a patient can be found to be contributorily negligent if he does not seek medical attention if he has reason to believe he is in danger.).  Courts have found that failure to disclose chest pains to a medical professional can be contributory negligence.  Fall v. White, 449 N.E. 2d 628, 633 (Ind. Ct. App., 1983).  Moreover, patients who fail to take reasonable care of themselves can absolve a defendant of liability in comparative negligence jurisdictions. Williams v. Birkeness, 34 F.3d 695 (8th Cir., 1994).

A patient who does not promptly seek medical assistance can be contributorily negligent. Parkins, 834 F. Supp. at 575.  In Parkins, the court stated that a patient has the duty to conform reasonably to necessary prescriptions and treatment and to follow reasonable and proper instructions given, and failure to do so, which directly and materially contributes to a patient's

9

injury, will prevent recovery in action for medical malpractice. Id. The patient in Parkins underwent surgery that resulted in his paralysis from the chest down. Id at 573. The paralysis required constant attention to prevent lethal infections caused by bed sores. Id. The patient became infected, but did not seek medical attention and died. Id. In the subsequent Federal Torts Claim Act action alleging malpractice, the court found that the doctors were not negligent and that the patient's cause of death was "exacerbated by the failure of Mr. Parkins and his family promptly to seek medical attention." Id at 575.

The District of Columbia Court of Appeals has ruled that a patient's contributory negligence can also extend to instances where she fails to take steps to ensure her own safety and health. Hall, 825 A.2d 954, 960 (D.C. 2003). In Hall, a surgeon warned his patient not to smoke after her operation because it would slow her healing. Id at 957. The patient, however, continued to smoke and as a result required two more surgeries. Id. The court determined that the patient's conduct did not meet the standard of care that a reasonable person would take to maintain her health. Id at 961. Therefore, the court found the patient's contributory negligence caused her injury. Id.

The failure of a patient to disclose chest pains can be contributorily negligent. Fall, 449 N.E. 2d at 633. In Fall, a patient complained to his doctor about chest pains. The doctor prescribed medication, but when the patient experienced chest pains again he did not tell his doctor about them. Id. The patient then had chest pain afterward, did not inform his doctor, and subsequently died of a heart attack. Id. The Indiana Court of Appeals held that the trial court's instruction on contributory negligence was accurate because the patient had failed to exercise reasonable care in protecting his life. Id at 634.

A patient's failure in his duty to take reasonable care of himself also has been recognized in comparative negligence jurisdictions. Williams, 34 F.3d at 697. In Williams, a patient went to see his doctor for chest and back pain and was diagnosed with inflamed chest cartilage. Later, the chest pain returned at a higher intensity, but the patient chose to ignore his symptoms. Id. The patient then had a heart attack and consequently sued his doctor. Id. The court ruled that by ignoring the second bout of intense chest pain, the patient's conduct caused his own injury and therefore the doctor was not negligent. Id. Moreover, the court stated that the patient's failure to seek medical care when he had chest pain was not foreseeable. Id at 698. Likewise, in Smith v. Perlmutter, a patient had two separate bouts of severe chest pain: once while mowing the lawn and once in the middle of the night that awoke him. 496 N.E.2d 358 (Ill. App. Ct., 1986). The patient did not seek medical advice from his doctor during these bouts and consequently the court barred his estate's action because of his comparative negligence. Id. The court stated that failing to seek medical care following such incidents was not prudent. Id at 361.

### V.  ARGUMENT

Captain Burton failed to seek medical treatment when he had chest pain and difficulty breathing on multiple occasions that preceded his death. The first time that Captain Burton experienced chest pain, it roused him from the couch where he was resting. Deposition of Mrs. Burton (hereinafter "Exh. A") at 83. Captain Burton then moved to his bedroom to lie down. Id. During his movement from the family room to the upstairs bedroom, he walked up a seven-step staircase and "became absolutely winded." Burton letter March 5, 2003 (hereinafter "Exh. B"). Once in the bedroom, he stated "Wow, that was scary," but did not speak about the incident anymore to his wife. Exh. A at 83. Captain Burton also did not express interest in going to the

11

hospital, consulting his daughter (who is a doctor) or his son (who is in medical school), or checking about chest pain or shortness of breath on the internet. Id at 84. His chest pain returned later and lasted for approximately a three-day period. Id at 86. The pain seemed to emanate from inside his chest. Exh. B. For this pain, he self-medicated with ibuprofen instead of seeking medical treatment. Id at 86.

On the day of his death, Captain Burton also experienced shortness of breath when he removed a rocking chair from a closet. Id at 81. Finding himself short of breath, he sat on his couch. Id at 85. Mrs. Burton stated that seeing her husband so winded was "incredible" because of Captain Burton's life-long athletic lifestyle. Id at 82. When Mrs. Burton asked her husband if he was "out of breath just from walking down the staircase," Captain Burton said "yes." Id at 85. When Mrs. Burton asked if Captain Burton was "still out of breath" a few minutes later, Captain Burton repeated "yes." Id. Later that day, Captain Burton died of a pulmonary embolism, which is typically forecast by difficulty breathing and chest pain.

After recurring shortness of breath and chest pains, Captain Burton committed contributory negligence by failing to seek assistance from a medical professional and by failing to disclose his symptoms to a medical professional. First, Captain Burton's contributory negligence arose from his failure to seek medical assistance during and after his shortness of breath and chest pain. His conduct fell below the standard of care a reasonable person would undertake or exhibit to ensure his safety. Like the patients in Parkins and Hall who did not act reasonably with regard to their health, Captain Burton did not act reasonably after experiencing shortness of breath and chest pain. As the patient in Parkins failed to seek medical assistance after developing infected bed sores, Captain Burton did not call any medical professional after

experiencing shortness of breath and chest pain. 834 F. Supp. at 575. Stating "Wow, that was scary" after the first bout of chest pain and shortness of breath, Captain Burton chose not to speak further on what he was experiencing. Exh. A at 83. Also Captain Burton failed to take steps to ensure his own safety and health as the patient in Hall who continued to smoke after surgery. In Hall, the patient acted unreasonably because the smoking disrupted her healing process. 825 A.2d at 957. Captain Burton also acted unreasonably by choosing only to take ibuprofen for recurrent, severe and unexplained chest pain that lasted for three days.

Second, Captain Burton committed contributory negligence by not disclosing his chest pain and shortness of breath to a medical professional. Captain Burton's conduct is analogous to the patients in Fall, Williams, and Smith. In those cases, the patients did not disclose chest pain or chose to ignore it. See Fall, 449 N.E. 2d at 633; Williams, 34 F.3d at 697; Smith, 496 N.E.2d at 361. Although in those cases the patients had heart attacks and not pulmonary embolisms, the patients' conduct was the focus of the courts' analysis. For example, in Smith, the court noted that the patient's failure to seek medical attention after having two bouts of chest pain was not prudent. Id. Captain Burton's conduct also was not prudent as he did not act after experiencing shortness of breath and recurrent chest pain.

Captain Burton's conduct, detailed by his wife who was with him almost constantly during his convalescence, establishes contributory negligence given the way he reacted to his recurrent shortness of breath and chest pain. Accordingly, Defendant is entitled to summary judgment.

## VI. CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court enter judgment in favor of the Defendant on Plaintiffs' claims.

                    Respectfully submitted,

                    /s  
                    JEFFREY A. TAYLOR, D.C. Bar # 498610  
                    United States Attorney

                    /s  
                    RUDOLPH CONTRERAS, D.C. Bar # 434122  
                    Assistant United States Attorney

                    /s  
                    STEVEN M. RANIERI  
                    Special Assistant United States Attorney  
                    Civil Division  
                    555 Fourth St., N.W.  
                    Washington, D.C. 20530  
                    202-353-9895

Of Counsel:  
Captain Kelly Davison  
U.S. Army Litigation Division  
901 N. Stuart Street, Suite 400  
Arlington, Virginia 22203-1837