UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DOSHIA DANIELS BURTON, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:05CV02214 (JGP) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiffs claim that Defendant was negligent in failing to warn Captain Burton of the risks associated with deep vein thrombosis ("DVT"). Defendant moved for summary judgment for contributory negligence, because Captain Burton failed to seek medical attention after experiencing severe chest pain and difficulty breathing. Plaintiffs now claim summary judgment would be inappropriate because there is a genuine issue of material fact over whether Captain Burton was warned about DVT.

Plaintiffs' Opposition (hereinafter "Pl.'s Opp.") misunderstands and misconstrues Defendant's arguments and thus fails to defeat the Defendant's motion for summary judgment. Captain Burton's contributory negligence is not based on whether he was at risk for DVT or whether he knew or should have known about the risks of DVT. Rather, Captain Burton's contributory negligence is based on the fact that he failed to seek medical attention after experiencing chest pain and shortness of breath. Any reasonable person, especially anyone of

Captain Burton's age, would seek medical attention after experiencing chest pain and shortness of breath. There is no dispute that Captain Burton experienced these symptoms and did not seek medical attention. Accordingly, summary judgment should be granted.

## II. ARGUMENT

A.    **Plaintiffs allege facts that are in dispute, but these facts are not material for this summary judgment motion of contributory negligence.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In order to show a genuine issue of material fact, the non-moving party may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To avoid summary judgment, the plaintiffs must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

Plaintiffs state that Captain Burton, "as a result of various factors . . . was at high risk for developing deep vein thrombosis . . . ." (Pl.'s Opp. 3). Defendant vigorously disputes this assertion.[1] Plaintiffs attempt to characterize this as an obvious assumption by denigrating the

---

[1] See, eg., Reply Ex. A, Dr. Hodges Davis Dep. at 19-21 ("The literature does not support a substantial increase of DVT in patients with ankle injuries or foot injuries.").

2

knowledge of the doctors who treated Captain Burton. (Pl.'s Opp. 12) ("Had [Burton's doctors] kept abreast of the medical literature, Dr. Potter or [Walter Reed] and its physicians would have known that DVT/PE were common after ruptured Achilles tendons."). Plaintiffs further allege that Captain Burton's physicians "had no appreciation of the true risk of pulmonary embolism that Captain Burton had as evidenced by their deposition testimony" (Pl.'s Opp. 8). Plaintiffs cite the deposition testimony of Dr. Rangamani Murthy, (Pl.'s Opp. Ex. 7) Dr. William Doukas (Pl.'s Opp. Ex. 8) and Dr. Benjamin Potter (Pl.'s Opp. Ex. 9), in support of this allegation. The deposition testimony does not support the Plaintiffs' assertion that the doctors had no appreciation of the risks of pulmonary embolism. Rather, the testimony reflects the doctors' disagreement with plaintiffs' assessment of the risk that Captain Burton faced. For example, Dr. Murthy's deposition reflects her honest medical opinion that Captain Burton was not at risk for pulmonary embolism based on his symptoms and medical history (Pl.'s Opp. Ex. 7, Murthy dep. at 15-16). Similarly, the cited portion of Dr. Doukas' deposition demonstrates that Dr. Doukas could not quantify the risks for DVT based merely on the hypothetical scenario posited by Plaintiffs' counsel. (Pl.'s Opp. Ex. 8, Doukas dep. at 20-22). None of the depositions cited demonstrate a lack of appreciation of the risk of DVT and pulmonary embolism. Instead, they reflect the honest and reasonable beliefs of the doctors who treated Captain Burton; opinions which are contrary to the opinion of Plaintiffs.

    Plaintiffs also point out that there is a genuine dispute about whether Captain Burton was warned of his risk of DVT (Pl.'s Opp. 16). There is indeed a dispute about whether Captain Burton was warned about the risk of DVT and whether the standard of care required him to be warned. Whether Captain Burton should have been warned about DVT turns on whether the

standard of care required such warnings. These facts are in dispute in this case and Plaintiffs' citation to medical journal articles does not establish the appropriate standard of care and resolve whether Captain Burton should have been warned of the risk of DVT.[2] Nor do Plaintiffs' assertions resolve whether Captain Burton was in fact warned about the risks of DVT. Plaintiffs correctly points out that there are genuine disputes about whether Captain Burton was at high risk for DVT, whether he was warned about DVT, and whether he should have been warned about DVT. However, these issues are not material facts and are irrelevant for the purposes of this summary judgment motion.

      Captain Burton's actual risk of DVT and the existence of warnings are not genuine issues of material fact because they cannot affect the outcome of this motion. Defendant's motion contends that Captain Burton should have sought medical treatment for severe chest pain and shortness of breath, independent of his achilles heel injury. In other words, the Defendant argues that Captain Burton was obligated to seek medical attention after experiencing chest pain and shortness of breath regardless of whether Captain Burton's doctors thought he was at risk for a pulmonary embolism and warned him of that risk. Plaintiffs do not dispute that Captain Burton failed to seek medical attention for his chest pain and shortness of breath. This is the only fact material for this summary judgment motion based on contributory negligence. Because plaintiffs have not raised a genuine issue of *material* fact, summary judgment is appropriate.

---

[2] The question of whether Captain Burton should have been warned about the risks of DVT is far from settled. See, e.g., Reply Ex. A, at 21-22 (stating that he would not warn ankle injury patients about DVT unless they had recently been on a long plane ride, had a previous DVT, or were on birth control.).

> **B.  Captain Burton is contributorily negligent because a reasonable person of his age would seek help after experiencing chest pain and shortness of breath, regardless of whether he knew he was at risk for a DVT.**

Plaintiffs correctly point out that the "essential question common to the evaluation of contributory negligence claims is whether plaintiff had the knowledge and appreciation of the dangers associated with *his condition* sufficient to enable him or her to make informed decisions regarding what actions to take to protect themselves" (Pl.'s Op. at 11) (emphasis added). However, Plaintiffs define Captain Burton's condition too narrowly and mistakenly assert that a finding of contributory negligence is appropriate only if "Captain Burton knew, or should have known, that shortness of breath or mid-chest pain were sentinel signs of an impending pulmonary embolism which could be fatal . . ." (Id. at 13).  Plaintiffs mistakenly focus on whether Captain Burton knew he was at increased risk for DVT, instead of the appropriate inquiry of whether a reasonable person of Captain Burton's age would have sought out medical treatment after experiencing severe chest pain and shortness of breath.

The District of Columbia defines contributory negligence as unreasonable conduct that "falls below the standard to which a plaintiff should conform for his or her own protection and contributes to the plaintiff's injury." Scoggins v. Jude, 419 A.2d 999, 1004 (D.C. 1980).  When courts examine a patient's possible contributory negligence, they determine whether the conduct conformed to a standard of care that a reasonable person would take to ensure his own safety. Durphy v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc., 698 A.2d 459, 465 (D.C. 1997).  To establish contributory negligence, the party asserting the defense must prove by a preponderance of evidence that the opposing party's negligence was a substantial factor in causing his or her injury, and that the injury or damage was either a direct result or reasonably

probable consequence of the negligent act or omission. George Washington Univ. v. Waas, 648 A.2d 178, 180 (D.C. 1994).

Captain Burton's symptoms were severe. In one incident he experienced chest pain so strong that it caused him to get up from the couch and say "That was scary." (Doshia Burton Dep. 83). In another incident, a simple walk up a seven-step staircase caused him to become "absolutely winded" (Def.'s Mot. Ex. B). Captain Burton also experienced shortness of breath while removing a rocking chair from a closet (Def.'s Mot. Ex. A at 81). When Mrs. Burton asked if Captain Burton was "still out of breath" a few minutes later, Captain Burton repeated "yes" (Id. at 85).

A reasonable person, much less one of Captain Burton's age, would seek medical treatment after experiencing symptoms such as these. Sudden chest pain while lying on a couch and prolonged shortness of breath from activities such as walking up short staircases or removing items from a closet are simply not normal. These symptoms are even more alarming given the fact that Captain Burton was "very athletic all of his life" (Id. at 81-82). The reasonable response was to seek some sort of medical treatment or advice. Instead of going to the hospital, consulting any of his children in the medical profession, or checking about his symptoms on the internet, Captain Burton simply chose to take some ibuprofen for his pain (Id. at 84-86). This constituted contributory negligence because he did not conform to "a standard of care that a reasonable person would take to ensure his own safety." Durphy, 698 A.2d at 465.

Case law supports the proposition that a patient who does not promptly seek medical assistance can be contributorily negligent. Parkins v. United States, 834 F. Supp. 569, 575 (D. Conn. 1993). Even though the court in Parkins phrased its holding in terms of proximate

6

causation, the doctrine of contributory negligence clearly entered into its reasoning. "A patient has a duty to conform reasonably to the necessary prescriptions and treatment and follow reasonable and proper instructions given, and failure to do so which *directly and materially contributes* to his injury will prevent a recovery in an action for malpractice." (Id. (emphasis added)). See also Chudson v. Ratra, 548 A.2d 172, 182 (Md. App. 1988) (holding that plaintiff's failure to seek medical assistance for the injury sued upon did not merely exacerbate the injury, but directly contributed to it).

More specifically, courts have held that a patient's failure to seek medical treatment after experiencing chest pains is contributorily negligent. In Harding v. Bell, 57 P.3d 1093 (Utah 2002), the Supreme Court of Utah affirmed a finding that the plaintiff was more than 50% negligent for failing to seek medical treatment after experiencing mild chest pain, malaise, and severe "chest discomfort." 57 P.3d at 1094. In Williams v. Birkeness, 34 F.3d 695 (8th Cir. 1994), a patient ignored intense chest pain after having been diagnosed with inflamed chest cartilage earlier. 34 F.3d at 697. The court ruled that by ignoring the second bout of intense chest pain the patient's conduct caused his own injury and therefore the doctor was not negligent. Id. Likewise, in Smith v. Perlmutter, a patient had two separate bouts of severe chest pain; one while mowing the lawn, and the other in the middle of the night. 496 N.E.2d 358 (Ill. App. Ct. 1986). The patient did not seek medical advice from his doctor during these bouts. Consequently the court barred his estate's action based on his comparative negligence. (Id.) The court stated that failing to seek medical care following such incidents was not prudent. (Id. at 361).

Common sense also suggests Captain Burton should have sought medical attention. A

man of any age, let alone a man in his sixties like Captain Burton, should know that severe chest pain inside his chest and shortness of breath may indicate something is seriously wrong. However, Captain Burton did not go to the hospital, consult his daughter (who is a doctor) or his son (who is in medical school), or check about chest pain or shortness of breath on the internet. (Def.'s Mot. Ex. A at 84). Instead, Captain Burton self-medicated with ibuprofen for several days and did not seek medical treatment. (Def.'s Mot. Ex. B). A quick Google search or WebMD search instructs that a person experiencing Captain Burton's symptoms should seek medical treatment immediately.[3] In addition, Captain Burton could have consulted either of his two children, both of whom have medical training (Id.; See also Def.'s Mot. Ex. A at 84). There is no genuine dispute that had Captain Burton consulted any of these resources he would have been instructed to seek prompt medical attention. Simply put, a reasonable person of Captain Burton's age would have sought medical assistance following his chest pain and shortness of breath. Case law, common sense, and readily available resources all support this conclusion.

Defendant should be granted summary judgment if it can show that Captain Burton's negligence "was a substantial factor in causing his . . . injury, and that the injury or damage was either a direct result or reasonably probable consequence of the negligent act or omission." George Washington Univ. V. Waas, 648 A.2d 178, 180 (D.C. 1994). Plaintiffs admit that

---

[3]On August 3, 2007, the first result when "chest pain shortness of breath" was entered into Google provided a simple flow chart to use based on one's symptoms. The recommendation for a person with Captain Burton's symptoms is "Emergency. Call an Ambulance Right Away." (Reply Ex. B. at 1-3). In addition, if "chest pain" is searched on WebMD.com and one goes through the "Symptom Checker" function, the recommendation is "Call your health Professional immediately." (Reply Ex. B. at 5-8). Defendant asks the Court take judicial notice of these facts pursuant to Federal Rule of Evidence 201(b). Defendant does not ask the Court to make any determination as to the truth of the content of these websites, but merely to take judicial notice of how easily accessible this information is on the internet.

Captain Burton's symptoms were "[t]he cardinal signs of pulmonary embolism . . ." (Pl.'s Opp. 6; See also Pl.'s Opp. Ex. 5) ("There were several incidents along the way that (in retrospect) spelled trouble."). Clearly not seeking medical attention was a substantial factor in Captain Burton's death. If Captain Burton had called 911, went to the emergency room, called his doctors, or consulted other resources after experiencing his symptoms in early February, his chance of survival on February 20 would have been much better. Plaintiffs admit that a DVT can be "fairly easily diagnosed through the use of duplex ultrasound." (Pls.'s Opp. 5). Medical science, case law, and common sense all support the fact that death or serious bodily injury is a probable consequence of untreated severe chest pain and shortness of breath. Accordingly, the standard for contributory negligence is met, and Defendant should be granted summary judgment.

### III. CONCLUSION

For the foregoing reasons and those set forth in Defendant's opening memorandum, the Court should grant Defendant's motion. Plaintiffs' claim for negligent failure to warn should be dismissed because of contributory negligence.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.,
Washington, D.C.  20530
(202) 353-9895

OF COUNSEL:
Captain Kelly Davidson
U.S. Army Litigation Division
901 N. Stuart Street, Suite 400
Arlington, VA  22203-1837