UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOSHIA DANIELS BURTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No.  05-2214 (RCL) |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Defendant moved for Summary Judgment alleging that Captain Burton's failure to seek medical attention for shortness of breath and recurrent chest pain was contributory negligence barring Plaintiffs' recovery.  This honorable Court ordered Defendant to file a supplemental memorandum briefing the issue of causation and whether Dr. Burton's failure to report or seek medical aide for these symptoms was a substantial factor in causing his death.  (Order, R. # 26.) Plaintiffs alleged that Captain Burton's death resulted from a deep vein thrombosis (DVT) resulting in a pulmonary embolism (PE) that went undiagnosed and untreated.  (Comp. ¶¶ 26-20,33-34.)   Captain Burton's death by PE was a reasonably probable consequence of untreated chest pain and difficulty breathing, which both parties concede would have been diagnosed and treated had Captain Burton sought medical attention.  Captain Burton's failure to seek medical treatment under the circumstances was a substantial factor in causing his death.  On account of this contributory negligence, Defendant is entitled to Summary Judgment regarding these claims.

## II. LEGAL STANDARDS

Defendant's original Motion for Summary Judgment addressed the legal standards for summary judgment, the function of contributory negligence as a bar to recovery, and causation. As the Court has ordered this supplemental memorandum on the sole issue of causation, a brief recitation of the relevant standards follow.

As a general matter, the law in the District of Columbia concerning causation is informed by those principles laid out in the Restatement of Torts. *See* Majeska v. D.C., 812 A.2d 948, 951 (D.C. 2002) ("[T]his court applies the Restatement of Torts' 'substantial factor' test.") *See also,* Lacy v. District of Columbia, 424 A.2d 317, 320 (D.C. 1980) (citing Restatement 2d of Torts § 433 (1966)).

The Restatement 2d of Torts, provides a useful guide for both understanding causation and identifying whether an act or omission plays a causal role in contributory negligence situations.

> The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case. Thus when a child is drowned in a swimming pool, no one can say with absolute certainty that a lifeguard would have saved him; but the common experience of the community permits the conclusion that the guard would more probably than not have done so, and hence that the absence of the guard has played a substantial part in bringing about the death of the child. Such questions are normally for the jury, and the court may seldom rule on them as matters of law.

Restatement 2d of Torts, § 433B, comment b.

In medical malpractice cases, contributory negligence is a valid defense if the patient's negligent act concurs with that of the physician and creates an unreasonable risk of improper medical treatment. Durphy v. Kaiser Found. Health Plan of Mid-Atlantic States, 698 A.2d 459,

467 (D.C. 1997), *citing* Weeda v. District of Columbia, 521 A.2d 1156, 1167 (D.C. 1987). In Durphy, the D.C. Court of Appeals examined an allegation of contributory negligence by a patient and in so doing looked to the law of other jurisdictions, namely Chudson v. Ratra, 548 A.2d 172 (Md. App. 1988). In Chudson, the Court of Special Appeals of Maryland held that a plaintiff's failure to seek medical assistance for the injury sued upon (spread of cancer to the point of incurability and lethality) did not merely exacerbate the injury, but directly contributed to it by precluding diagnosis and treatment at a time when the cancer was still probably curable. Id. at 182. The Chudson Court, using the common sense and experience contemplated by the Restatement 2d of Torts, highlighted the plaintiff's neglect towards her own health. "To adopt the view that it is not negligent for women to ignore breast changes that are obvious to them would defy medical reality and thus be absurd." Id. at 183. Ignoring telltale signs for several months, the Court concluded, contributed to "a tragedy that the evidence shows [plaintiff] could have avoided." Id. Thus, where the evidence supports that an outcome in diagnosis and treatment would have been different but for a plaintiff's failure to act as a reasonable person would, plaintiff's action can be contributory negligence barring recovery.

### III.  ARGUMENT

Captain Burton died on February 20, 2003, from a deep vein thrombosis (DVT) and a pulmonary embolism (PE) relating to his tendon injury. In a letter dated March 05, 2003, Mrs. Burton informed Walter Reed that there were several incidents that occurred during her late husband's recovery that she felt were warning signs of what she later learned to be a blood clot, or PE. (R. #18, Motion for Summary Judgment, Ex. B., letter from Mrs. Burton.) In her deposition, Mrs. Burton described the severity of Captain Burton's symptoms. In one incident,

Captain Burton experienced chest pain so strong that it caused him to get up from the couch and say "[t]hat was scary." (Id. Ex. A, Doshia Burton Depo. at 83.) In another incident, a simple walk up a seven-step staircase caused him to become "absolutely winded" (Id. Ex. B.) Captain Burton also experienced shortness of breath while removing a rocking chair from a closet. (Id., Ex. A at 81.) When Mrs. Burton asked if Captain Burton was "still out of breath" a few minutes later, Captain Burton repeated "yes". (Id. at 85.) Defendant's prior Motion for Summary Judgment explained why Captain Burton's failure to seek medical treatment for those symptoms was contributory negligence. The questions this Court raises concerning causation are as follows: 1) would doctors have diagnosed and treated Captain Burton for DVT and PE had he sought medical attention for his chest pain and shortness of breath?; 2) If the doctors had diagnosed Captain Burton with a DVT, could treatment have prevented his death?

  Both Defendant and Plaintiffs agree that shortness of breath and recurrent chest pain are the classic warning signs of PE. Plaintiffs admit that Captain Burton's symptoms were "[t]he cardinal signs of pulmonary embolism . . ." (R. # 22, Pl.'s Opp. 6; See also Pl.'s Opp. Ex. 5) ("There were several incidents along the way that (in retrospect) spelled trouble."). There is no material dispute that if Captain Burton sought medical attention for chest pain and/or shortness of breath, he would have been tested and treated for the very conditions alleged to have caused his death. Testimony from Plaintiff's expert, Dr. Paul Genecin, suggests that had Captain Burton presented with his symptoms to an emergency room, such a visit would result in testing specifically targeted to a diagnosis.

> shortness of breath and chest pain in patients who are symptomatic for pulmonary embolism are the very symptoms that the patient is most likely to complain about in a setting which he has a very significant risk factor of lower extremity immobilization due to injury, plus the signs and symptoms that are strongly

> suggestive of deep venous thrombosis.  In that situation you have a patient who, *if he came in to your emergency room, you would assign a very high preworkup or pretest probability of pulmonary embolus.*

(Supp Memo., Ex. A, Depo. of Dr. Genecin at 87) (emphasis added).  Similarly, Plaintiff's other expert, Dr. Margaret Baker, also acknowledges that "chest pain and other symptoms indicative of pulmonary embolism [are] shortness of breath, coughing, etc." (R.# 22, Pl's Opp., Ex. 11, Baker Expert Report.)  Not surprisingly, Defendant's expert also agrees that if Plaintiff had sought medical attention for shortness of breath and chest pain, the emergency room would have immediately done a work up to test for DVT.

> There is nothing...in any of the records that I have reviewed that...would make me think the swelling and the pain that [Captain Burton] presented with was anything other than a routine Achilles tendon rupture.  *If he would have called and said, 'I got shortness of breath,' I would have absolutely told him to go to the emergency room.  We need to rule out DVT.*

(Supp. Memo, Ex. B, Depo. of Dr. Davis at 97-8) (emphasis added).  Given the unanimity of expert opinions, there is no dispute that if Captain Burton had sought medical attention for shortness of breath and chest pain, along with his immobilized foot, he would have been tested for DVT.

There is also no dispute that if Captain Burton was tested for DVT, the test would have significantly affected his prognosis.  Plaintiffs acknowledge that if doctors had tested Captain Burton for DVT, Captain Burton would likely have been treated and avoided the deadly PE.  Plaintiffs admit that "if there is suspicion that a person has a DVT, it is fairly easily diagnosed through the use of duplex ultrasound, a non-invasive procedure that is painless and takes approximately 20 minutes to conduct." (Pl's Opp. at 5.)  Plaintiff's expert, Dr. Baker, states that based on her experience at Walter Reed Army Medical Center, with "one phone call" doctors

5

could have gotten Captain Burton the decisive ultrasound imaging test "within an hour" and that it "would not have been difficult to get that test." (Supp. Memo, Ex. C, Depo. of Dr. Margaret Baker at 38.) "Once identified, negative results would rule out DVT and positive test results would have lead to the indicated treatment of anticoagulation, to promote thinning of the blood." Id. As Dr. Baker states in her expert report, "It is also my opinion to a reasonable degree of medical certainty, that, but for the failure to properly assess and treat Capt. Burton, it is more likely than not that Capt. Burton would have avoided the fatal PE and survived with minimal injury." (R.# 22, Pl's Opp., Ex. 11, Baker Expert Report at 3.)

Plaintiff's second expert, Dr. Genecin, also makes clear that Captain Burton's DVT condition, which Plaintiffs alleged caused Captain Burton's death, would have been identified and effectively treated if Captain Burton had sought medical attention. Dr. Genecin states:

> treatment including anticoagulation would have prevented Mr. Burton's death from massive PE. Moreover . . . If Mr. Burton had known that . . . chest pain and shortness of breath could have been symptoms of a medical emergency, he would have known to seek timely treatment–and with a reasonable medical certainty, his death from massive PE could have been prevented.

(R. #22, Pl's Opp., Ex. 10, Genecin Expert Report at 3-4.) Dr. Genecin makes clear that had Captain Burton sought medical attention *any time,* up to and including the day of his death, his DVT would have been treated and Captain Burton's death could have been prevented. As Dr. Genecin states "More likely than not, [Captain Burton's] death would have been preventable as late as the day of his demise if he had [sought] evaluation and treatment for symptoms compatible with DVT and PE." (Pl's Opp., Ex. 10, Genecin Expert Report at 3.)

Defendant's initial Motion for Summary Judgment explains why Captain Burton should have known that his chest pain and shortness of breath were symptoms of a medical emergency

6

(even if he didn't know they were symptoms of DVT), for which a reasonably prudent person would have sought medical treatment. (See generally R.#18, Motion for Summary Judgment; R.# 23, Reply.) Plaintiff's own experts make clear that the symptoms Captain Burton experienced at home were highly indicative of DVT, the condition which caused his death.  Moreover, they agree that if Captain Burton had communicated those symptoms to a doctor, a simple and decisive testing process could have conclusively identified the DVT, and simple anticoagulation treatment could have prevented his unfortunate demise.  Despite whatever negligence Plaintiffs allege against the United States, there is no dispute that Captain Burton's failure to seek medical attention clearly contributed to his death.  The experts agree that if Captain Burton had sought treatment for his chest pain and shortness of breath, his condition would have been diagnosed and treated.  Stated another way, there is no dispute that Captain Burton's failure to seek treatment was a substantial factor in the recognition, diagnosis, and treatment of his DVT which caused Captain Burton's death.

     There is no talisman of legal doctrine which can make more clear what common sense and experience suggest; men in their sixties who experience chest pain and shortness of breath to the point of being frightened should seek immediate medical attention.  A reasonable person would not simply wait and self medicate.  While the law does not expect the average person to make the kind of diagnosis expected of a medical professional, it should not uniformly excuse those who undertake to do so rather than seek an informed opinion from an emergency room (or even from one's own children trained in medicine).  Captain Burton's failure to seek proper medical care in the face of serious symptoms played a causal role resulting in his death.  As Plaintiffs' experts make clear, chest pain and shortness of breath are clear indicators of DVT,

which ultimately led to Captain Burton's death. There is no dispute that had Captain Burton sought medical care for his symptoms, this information would have triggered dispositive diagnostic tests and treatment, which would have substantially, perhaps dramatically, changed Captain Burton's prognosis. The only dispute before this Court on Defendant's Motion is whether Captain Burton should have sought medical attention for his chest pains and shortness of breath. If the Court determines that a prudent person in Captain Burton's situation should have sought medical attention, it should grant Defendant's Motion for Summary Judgment.

### IV. **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court enter judgment in favor of the Defendant on Plaintiffs' claims.

Respectfully submitted,

/s
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
Captain Dan Dalrymple
U.S. Army Litigation Division
Arlington, Virginia 22203-1837