# Exhibit A

```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
         - - - - - - - - - X
         DOSHIA DANIELS BURTON, ET AL.,|
                 Plaintiffs, | Civil Action No.
                             |  05-2214(JGP)
              v.             |
         UNITED STATES OF AMERICA,     |
                 Defendant.| April 10, 2007
         - - - - - - - - - X



              DEPOSITION OF PAUL GENECIN, M.D.


              Taken before Kristine A. Paradis, LSR 338, a
         Court Reporter and Notary Public within and for
         the State of Connecticut, pursuant to Notice
         and the Federal Rules of Civil Procedure, at
         the offices of the U.S. Attorney, 157 Church
         Street, New Haven, Connecticut, on April 10,
         2007, commencing at 1:03 p.m.






                    FALZARANO COURT REPORTERS
                       117 North Saddle Ridge
                   West Simsbury, Connecticut 06092
                             860.651.0258
```

```
APPEARANCES:

   For the Plaintiffs:

          THE EATON LAW FIRM, PLLC
          1111 Fourteenth Street NW
          Suite 777
          Washington, D.C. 20005
          202.789.0088
          202.789.1377 (fax)
              BY: ALLEN T. EATON, III, ESQ.

   Via Telephone
   For the Defendant:

          OFFICE OF THE UNITED STATES ATTORNEY
          555 Fourth Street NW
          Washington, D.C. 20530
          202.353.9895
              BY: STEVEN RANIERI, ESQ.
```



3

### STIPULATIONS

It is stipulated and agreed by counsel for the parties that all objections are reserved until the time of trial, except those objections as are directed to the form of the question.

It is stipulated and agreed between counsel for the parties that the proof of the authority of the Notary Public, before whom this deposition is taken, is waived.

It is further stipulated that any defects in the Notice are waived.

It is further stipulated that the deposition may be signed before any Notary Public.

4

(Deposition commenced: 1:03 p.m.)

PAUL GENECIN, M.D., Deponent, of Yale University Health Services, 17 Hillhouse Avenue, New Haven, Connecticut 06520-8237, being first duly sworn by the Notary Public, was examined and testified, on his oath, as follows:

### DIRECT EXAMINATION

BY MR. RANIERI:

Q   Good morning, Doctor. My name is Steve Ranieri. I'm from the U.S. attorney's office in Washington, D.C., and I represent the United States, the Defendant in a lawsuit filed by Mrs. Doshia Burton and other family members of the Burton family in the estate of Captain Samuel Burton.

Have we met before, Doctor?

A   Not that I can recall.

Q   And I don't recall that either. I just wanted to state that on the record.

MR. RANIERI:   Mr. Eaton, you had said that you had something you wanted to state before we begin?

```
 1    A    It doesn't exactly characterize what I
 2  stated.
 3    Q    I'm sorry, I mischaracterized it. Please
 4  correct me then.
 5    A    It wasn't a list of risk factors that
 6  needed to be documented, it was a list of
 7  instructions for the patient, legible, easily
 8  understood instructions so that the patient knows
 9  what to look for, what to eat, what to drink, what
10  medicines to take, what activities to pursue, what
11  to avoid, when to follow up, when and how to call,
12  whom to call. That kind of information which is
13  standard. That was missing from the chart.
14         And we have subsequently information from
15  depositions that there really was no specific kind
16  of information in writing that was provided to a
17  patient such as this, despite the fact that this
18  patient had a substantial risk, not a low risk of
19  developing deep venous thrombosis and pulmonary
20  embolus.
21    Q    Doctor, is there anything else with this
22  opinion or do you want to move to the fourth?
23    A    That's it.
24    Q    Okay. Is there a fourth opinion?
25    A    No.
```

```
 1    Q    So, these are the three?
 2    A    Those are the three.
 3    Q    Now, Doctor, the symptoms of pulmonary
 4  embolism, I believe you stated those earlier. Did
 5  Mr. Burton exhibit any of those symptoms?
 6    A    Of pulmonary embolism?
 7    Q    Yes, sir.
 8    A    Well, in retrospect, yes, he did. In the
 9  time preceding his death he did have those symptoms.
10    Q    What specifically did he experience that
11  you believe were, in retrospect, symptoms of a
12  pulmonary embolism?
13    A    All the information we have on that
14  subject is contained in the deposition as well as
15  the letter that was written by Mrs. Burton but
16  included chest pain as well as shortness of breath,
17  both symptoms of which are very highly suggestive of
18  pulmonary embolis in a patient at high risk for deep
19  venous thrombosis who also have symptoms compatible
20  with deep venous thrombosis. So, this was a patient
21  who had a very high risk of having and very high
22  probability of having pulmonary embolus at the time
23  that he had chest pain and shortness of breath.
24    Q    I'd like you to explain it. You said a
25  high probability of having pulmonary embolism?
```

```
 1    A    Right.
 2    Q    Could you explain what you mean by high
 3  probability?
 4    A    Well, when you have a patient who's not
 5  diagnosed, what you have is an assessment to which
 6  you attach some level of likelihood, that it's a
 7  very low level of likelihood that the patient has a
 8  brain tumor in this situation. These aren't really
 9  symptoms that are strongly suggestive of it.
10         On the other hand, shortness of breath and
11  chest pain in patients who are symptomatic for
12  pulmonary embolism are the very symptoms that the
13  patient is most likely to complain about in a
14  setting which he has a very significant risk factor
15  of lower extremity immobilization due to injury,
16  plus the signs and symptoms that are strongly
17  suggestive of deep venous thrombosis. In that
18  situation you have a patient who, if he came into
19  your emergency room, you would assign a very high
20  preworkup or pretest probability of pulmonary
21  embolus.
22         This would be in contrast to a situation
23  of a totally healthy 62-year-old man who came in
24  with some atypical chest pain and some transient
25  shortness of breath where this might be one of your
```

```
 1  diagnostic considerations, but you may consider it
 2  to be of lesser probability. You might be
 3  considering casting the net wider to include cardiac
 4  etiology, gastrointestinal etiology, pneumonia, and
 5  other types of a musculoskeletal pain, you know,
 6  broad differential diagnosis. In this situation you
 7  are in a very high probability situation for
 8  pulmonary embolism.
 9    Q    Now, Doctor, in shortness of breath and
10  chest pain as described in the two sources that you
11  indicated --
12    A    Yes.
13    Q    -- the deposition of Mrs. Burton and the
14  letter that was written by Mrs. Burton --
15    A    Yes.
16    Q    -- other than pulmonary embolism, are
17  those risk factors -- I shouldn't say risk factors,
18  excuse me. Are those symptoms of any other possible
19  problems that a patient could have been
20  experiencing?
21    A    Yes.
22    Q    What would those have been?
23    A    Cardiac disease, coronary insufficiency or
24  myocardial infarction, pneumonia or lung disease of
25  different sorts, musculoskeletal injury as for
```