# Exhibit B

ORIGINAL

1

```
             UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF COLUMBIA


- - - - - - - - - - - - - -x
DOSHIA DANIELS BURTON, et al.:

        Plaintiffs,            :

vs.                            :  Civil Action No. 05-2214 (JGP)

UNITED STATES                  :

DEPARTMENT OF THE ARMY         :

        Defendant.             :

- - - - - - - - - - - - - -x
                                  Washington, D.C.

                                  Friday, February 9, 2007
```

Deposition of:

DR. MARGARET M. BAKER

the Deponent, called for examination by counsel for the Defendant, pursuant to notice and agreement as to time and place, at 555 4th Street, N.W., Washington, D.C., before Timothy Atkinson, a Notary Public in and for the District of Columbia.

FREE STATE REPORTING, INC.
Court Reporting   Depositions
D.C. Area (301) 261-1902
Balt. & Annap. (410) 974-0947

```
 1  APPEARANCES:
 2              On Behalf of the Plaintiff:
 3              ALLEN P. EATON, ESQUIRE
 4              1111 14th Street, Northwest
 5              Suite 7777
 6              Washington, D.C.  20005
 7              202-789-0088
 8
 9              On Behalf of the Defendant:
10              STEVE RANERI, United States Attorney
11              501 3rd Street, Northwest
12              Washington, D.C.
13              202-353-9095
14
15              CORPORAL KELLY DAVISON
16              United States Army Legal Services
17
18              DR. KYLE POTTER
19              Walter Reed Army Medical Center
20
21
22                       I N D E X
23  WITNESS:            EXAMINATION:              PAGE:
24  Dr. Margaret M. Baker    Direct - Mr. Raneri      3
25
```

A.  My thought is that in, in this case when there should have been clinical suspicion of DVT, the first and foremost step is to get that stat ultrasound for imaging. And I'm sure a physician of Dr. Potter's stature could simply just pick up the phone and make one phone call, fill out a request slip, and his patient would be down getting his ultrasound within an hour. You know, I've worked in Walter Reed, and it's a great institution, it's comprehensive. It would not have been difficult to get that test, especially when they had already have taken his cast off. So it would have been easy to send him right down there. If he had come back from that test and it was completely negative, then a reasonable and prudent physician would say, okay, we've, we've absolutely ruled out the DVT problem here, but I need to tell you, if you get increased swelling, or increased pain, or cough, or chest pain, or shortness of breath, you need to get back to the emergency room immediately. So even if the work-up is negative. If the work-up is positive, obviously, he would have been inequagulated (phonetic).

Q.  Doctor, let's go before the time that you're referring to where the cast was off and there was the exam being done. Let's go back to the very first instance of treatment for Captain Burton regarding the Achilles and when the splint was placed. What would the standard of care require that a doctor do to inform a patient in those

1  circumstances of the symptoms of a pulmonary embolism?
2      A.   You know, typically, and it depends on where you're
3  practicing, a patient might not necessarily even see a surgeon
4  on that visit.  I mean, it was really nice for him that he got
5  to meet Dr. Potter in the emergency room.  But many
6  institutions, the emergency room physician or possibly even
7  the primary care physician would have made the diagnosis,
8  applied the splint and possibly referred the patient to a
9  surgeon.  It appears, and I think I remember from Dr. Potter's
10 deposition, that when Captain Burton presented at the E.R.,
11 Dr. Potter evaluated him in the E.R. and apparently talked
12 with him about the risk versus benefits of treatment options,
13 and non-operative treatment was selected and he was placed in
14 the splint.  Typically, when we are the ones physically
15 placing the splint, we would inform the patient about
16 potential neurovascular compromise and the signs and symptoms
17 to look for that would necessitate a return to the clinic or
18 the emergency room.  And typically in the discussion about
19 surgical versus nonsurgical options, DVT and PE would be at
20 least mentioned.
21     Q.   So by at least mentioning DVT and PE, that would
22 meet the standard of care?
23     A.   Yes, I, I have no objections to Dr. Potter's care in
24 the emergency room.  I thought that he provided excellent care
25 on that visit.