# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOSHIA DANIELS BURTON, *et al.,*)
                                )
            Plaintiffs,         )
                                )
            v.               )  Civil Action No. 05-2214 (RCL)
                                )
UNITED STATES OF AMERICA,     )
                                )
          Defendant.      )

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
### ON THE ISSUE OF CAUSATION AND IN OPPOSITION
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States of America has moved for summary judgment, asking this Court to rule that Captain Samuel Burton was contributorily negligent as a matter of law and that his negligence was <u>a</u> substantial factor in causing his death.  The Court has ordered the parties to brief the issue of causation as it relates to an alleged failure on Captain Burton's part to seek medical care or to inform his physician when he suffered episodes of shortness of breath and chest pain.  The Court instructed the parties to address only the causation issue to determine if any alleged negligence of Captain Burton was a substantial factor in causing his death.

Evidence of record establishes that any alleged negligence on Captain Burton's behalf, *i.e.,* his alleged failure to seek medical help or

to report the episodes of shortness of breath and pain in his chest, were neither the cause-in-fact nor the proximate or legal cause of his death, for the following reasons:

1.  A special relationship existed between Captain Benjamin Potter, the treating physician, and Captain Burton under which a duty was imposed upon Captain Potter and the other treating physicians to educate Captain Burton, to make him aware that his life was endangered and to make him aware that he was at high to moderate risk of developing a pulmonary embolism ("PE") because his leg was immobilized in a cast, because of his age, and because he was placed on prolonged bed rest.  By placing himself under the care of Captain Potter and the other physicians at Walter Reed Army Medical Center ("WRAMC") for the diagnosis and treatment of his Achilles tendon rupture, Captain Burton justifiably relied upon the treating physicians to provide him with information necessary to insure his safety.  The physicians' failure to fulfill their duty to properly diagnose, treat and educate Captain Burton deprived the United States of the defense of contributory negligence because Captain Burton had no appreciation of the peril that he was in due solely to defendant's negligence;

2.    Any alleged negligence on Captain Burton's part was neither concurrent nor simultaneous with the negligence of the defendant physician, Captain Benjamin Potter, who last saw Captain Burton on February 7, 2003;

3.    Defendant has failed to carry its burden of proof that Captain Burton did not seek care from WRAMC or his physicians between February 7, 2003, the date of his last visit, and his death on February 20, 2003, thirteen (13) days later.  During this period of time (February 14-21, 2003), the Howard County/Baltimore/Washington area was besieged by "the snow storm of the century," *i.e.*, the biggest storm since 1870, which dropped 20" to 32" of snow, ice, sleet and rain, making communication as well as travel most difficult or, in some instances, impossible.[1]

Defendant's own evidence discloses that Captain Burton communicated, or made attempts to communicate, with Captain Potter as late as the day before he died and that he was seeking to move his appointment to see Dr. Potter from February 25th when it was scheduled to February 21, 2003. This information is contained in paragraph 16 of the defendant's Uncontroverted Facts accompanying defendant's

---

[1] *See* National Weather Service Storm Data and Unusual Weather Phenomena for February 2003, attached hereto as Exhibit 1.

Motion for Summary Judgment. Plaintiff was not aware of this fact until a review of the defendant's motion for summary judgment. Plaintiff was unable to find this information in Captain Burton's medical records provided to Mrs. Burton by WRAMC;

4.  Captain Burton's actions in attributing his shortness of breath to deconditioning or detraining, a reversal of adaptation to training, and his chest pain to exertion resulting from having to make his way through deep snow on crutches shortly before the pain appeared were reasonable and well-founded and therefore, were not negligent and not the proximate cause of his death.

In view of the foregoing, it would be inappropriate to grant summary judgment to the United States, the party with the burden of proof, on its contributory negligence claim. The United States has neither borne its burden to prove that there is no dispute as to any material fact nor has it demonstrated that it is entitled to judgment as a matter of law on the issue of causation.

## I. FACTS RELEVANT TO THE ISSUE OF CAUSATION

Prior to the incident which is the subject matter of this lawsuit, Captain Burton had enjoyed good health; he had never been incapacitated, he had never had his leg immobilized, and he had never

been placed on prolonged bed rest.  Thus, when Captain Burton ruptured his Achilles tendon while playing basketball he, like the majority of people, had no knowledge of the perils of deep vein thrombosis ("DVT") or pulmonary embolism associated with a plaster cast immobilizing a leg or the symptoms of a pulmonary embolism.[2]

When a person's leg is immobilized, a person's blood slows down and they have a tendency to develop blood clots in the deep veins in the calves of their legs.  These clots are called deep vein thrombosis ("DVT").  These clots can move to the lungs and heart and cause almost instant death.  The clots most often block blood flow to the lungs and are called pulmonary embolisms ("PE").  If the clots are discovered in time, they can be treated with clot-preventing and clot-dissolving drugs such as heparin.  This is superior knowledge and information that persons with medical training such as Captain Potter are required to know and are obligated to educate their lay patients who are at risk for this deadly condition.

Defendant has not alleged and cannot allege that Captain Burton had any actual or imputed knowledge of the perils of pulmonary embolism created by the plaster cast immobilization of his leg.  The

---

[2]  *See* Exhibit 4 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.  As contained in the White Paper, the American Public Health Association (APHA) and the Centers for Disease Control (CDC) found, among other things, that when the White Paper was published in 2002, 74% of Americans were unaware of DVT.

risk of DVT associated with cast immobilization of legs after Achilles tendon rupture was not known by most lay persons but was known, however, in the community of orthopaedic surgeons.[3]

Captain Burton was an attorney and career military officer who had no training in medicine and had no knowledge of the symptoms of a deep vein thrombosis or a pulmonary embolism (*see* Exhibit 6 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Affidavit of Doshia Daniels Burton, ¶¶ 7-9, 13-4 and 19). Captain Burton was primarily an administrative officer in the United States Coast Guard who had risen to the rank of Captain, one grade below Admiral.

Captain Potter was a second year orthopedic surgery resident, *i.e.*, he had graduated from medical school and was in his second year of post-graduate training.[4] As such, Captain Potter was required to keep abreast of the advanced state of medical knowledge. *Incollingo v. Ewing*, 282 A.2d 206, 213 (Pa. 1969).

Captain Burton was compliant with his physicians' orders and faithfully followed their instructions. He kept each appointment that

---

[3] *See* Micheli, "Thromboembolic Complications of Cast Immobilization for Injuries of the Lower Extremities," Clin Orthop Relat Res 108, 191– 195 (1975), particularly Patients 3, 4 and 6, attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment as Exhibit 13; *see also* Heit, *et al.*, "Risk Factors for Deep Vein Thrombosis and Pulmonary Embolism," Arch Intern Med. 2000;160-809-815, attached hereto as Exhibit 2.

[4] Deposition of Captain Benjamin Potter, p. 5 (portions of Dr. Potter's deposition accompany this Supplemental Memorandum as Exhibit 3).

Captain Potter scheduled for him after he was first placed in the cast on January 15, 2003.   After the January 10, 2003 injury, Captain Burton was told to return to see Captain Potter on or about February 7, 2003, which he did.  At the February 7th appointment, the cast was changed.  It should be noted that, by February 7th, Captain Burton's left leg had already been immobilized in a plaster cast for 23 days, from January 15th to February 7th.  On February 7th, Captain Burton was again told to return to Dr. Potter's office in a little over two weeks on February 25, 2003.

Defendant, without explanation, alleges that Captain Burton cancelled an appointment scheduled for February 12, 2003.  Plaintiff finds this statement to be self-serving as Captain Burton's medical records contain no reference to a February 12th appointment or to the cancellation of a February 12th appointment.  Any suggestion that Captain Burton was non-compliant seems to be unfounded and unsupported by the medical records.

Further, defendant has offered no supportive evidence for paragraph 16 of its Statement of Uncontroverted Facts, in which defendant claims that on February 19, 2003, Captain Burton contacted someone to try to advance his appointment from February 25, 2003 to February 21, 2003.  If such an attempt was made by Captain Burton, it indicates that there were conversations between Captain Burton and

*someone* associated with the defendant on the day before he died.  No

such information has been disclosed to plaintiff previously, but this

information surely suggests and could reasonably be interpreted as

Captain Burton trying to come in to see the physicians at WRAMC

sooner than his scheduled appointment.

## II.   LEGAL STANDARDS RELATED TO CAUSATION IN THE CONTEXT OF A CONTRIBUTORY NEGLIGENCE CLAIM

A defendant alleging that it should be immune to liability

because of the contributory negligence of the plaintiff has the burden

of proof and must adduce evidence showing, among other things, that

the plaintiff's actions were the cause-in-fact of his injury.  Although

there is some confusion as to its proper terminology, there is a second

essential element which must be present before contributory

negligence may be found to immunize a defendant from liability.  That

is, there must be a sufficient nexus between the plaintiff's alleged

negligence and the injury.  Only when both elements are present will

plaintiff's negligence be considered the "proximate cause" of the injury

such that liability can be assessed to the plaintiff and thereby negate

the negligence of the defendant.  The foregoing "proximate cause" or

"legal cause" evaluation determines that even if an alleged dereliction

by a plaintiff is found to be a cause-in-fact of an injury, an inquiry

must be made to determine what legal effect, if any, will be given to the plaintiff's alleged conduct.

In these proceedings, the question which has to be answered in determining if the defendant is entitled to summary judgment as a matter of law is not whether the proofs of plaintiff's alleged negligence offered by defendant are sufficient to maintain a claim of contributory negligence at trial but is the proof so overwhelming (*i.e.*, lending itself to but one conclusion) to justify a finding of contributory negligence as a matter of law. *Tilghman v. Johnson*, 513 A.2d 1350, 1351 (D.C. 1986); *Carter v. Singleton*, 219 A.2d 114, 115 (D.C. 1986). It is highly unusual for the party who has the burden of proof to have summary judgment issued in his favor on the disputed issue of contributory negligence.

This is normally a question for the finder of facts.

### III.  ISSUES

A.    <u>When the Alleged Negligence of the Plaintiff's Decedent is not Concurrent With The Negligence of the Defendant, Can Plaintiff's Alleged Negligence be a Substantial Factor in Causing Plaintiff's Decedent's Death?</u>

B.    <u>Where a Defendant Physician Violates His Duty to Educate a Patient by Advising Him that He is at Moderate to High Risk of a Fatal Pulmonary Embolism ("PE") and Fails to Advise the Patient of the Symptoms of a PE, Such as Shortness of Breath and Midsternal Pain, Can the Physician Avoid Liability Under the Doctrine of Contributory Negligence if the Patient Fails to Diagnose His Own Condition and Fails to Seek Medical Care on an Emergent Basis When He Experiences Shortness of Breath and Chest Pain Which He Believes Are Due To Other Causes?</u>

C.  Is a Patient Contributorily Negligent When He Relied on the Superior Knowledge, Skill and Training of the Physician From Whom He Sought Treatment to Advise Him of any Special Dangers Associated With the Course of Treatment and the Physician Fails to Adequately Advise Him or Fails To Advise Him At All Concerning the Signs and Symptoms of a Potentially Fatal Complication of the Course of Treatment?

D.  Under the Circumstances of this Case, Has the Defendant Borne the Burden of Proof (i) That Captain Burton Did Not Seek Help When He Experienced Shortness of Breath and Chest Pain; (ii) That Any Failure on Captain Burton's Part to Seek Help or Inform Captain Potter of His Symptoms was Unreasonable; and (iii) That Captain Burton Knew, or in the Exercise of Reasonable Diligence, Should have Known that Shortness of Breath and Chest Pain Were Symptoms of Pulmonary Embolism?

## IV.  **ARGUMENT**

### A.  **The Negligence of the Defendant and the Alleged Negligence of Captain Burton Were Not Concurrent and, Therefore, Was Not a Substantial Factor in Causing Captain Burton's Death**

The fact that the negligence of Captain Potter and the alleged negligence of Captain Burton did not occur concurrently or simultaneously is fatal to defendant's claim under the majority rule.

Captain Potter last saw Captain Burton on February 7, 2003.  At that time, Captain Burton had suffered the trauma of the ruptured Achilles tendon; he had increased swelling in his ankle area and had been immobilized in a plaster cast for 23 days.  He had been told to elevate his leg when not ambulating and to put no weight on his left leg.  Captain Burton was over 60 years of age.  Each of the foregoing

factors -- *i.e.*, recent trauma, increased swelling, immobilization in a plaster cast, bed rest and being over 60 years old -- are factors known to increase the likelihood of DVT/PE.[5]  Notwithstanding the foregoing, defendant failed to perform appropriate diagnostic tests on Captain Burton during this appointment.

Based upon Captain Burton's clinical presentation on February 7, 2003, plaintiff's experts opine that it was more likely than not that Captain Burton was in the incipient stages of developing DVT which often leads to a pulmonary embolism.  Plaintiff's experts also opine that had Captain Burton received anti-clotting therapy on or about February 7th, it is more likely than not that he would not have developed the fatal pulmonary embolism.  During the February 7, 2003 appointment, Captain Burton did not receive proper diagnostic testing, did not receive anti-clotting therapy and was not adequately warned, if warned at all, of the potential dangers of DVT and pulmonary embolism.

The majority rule provides that where the negligence of the defendant is not simultaneous with the alleged negligence of the plaintiff, the defense of contributory negligence does not completely bar a plaintiff's recovery.  The plaintiff's recovery is completely barred

---

[5] *See* Wells, *et al.*, "A simple clinical model for the diagnosis of deep-vein thrombosis combined with impedance plethysmography:  potential for an improvement in the diagnostic process," *Journal of Internal Medicine* 1998:243:15-23, at p. 20 (attached hereto as Exhibit 4).

only if the patient's negligent acts are contemporaneous with the physician's negligence. *George Washington University v. Waas,* 648 A.2d 178, 180 (D.C. 1994); *Durphy v. Kaiser Foundation*, 698 A.2d 459, 467 (D.C. 1997).

Defendant, on the other hand, urges the Court to follow the approach set forth in *Chudson v. Ratta*, 76 Md. App. 753, 548 A.2d 178, 181-183 (Md. App. 1998). The District of Columbia Court of Appeals has adopted the *Chudson* rationale in eschewing the strict contemporaneous and simultaneous requirements for finding contributory negligence if a plaintiff's dereliction has significantly contributed to the injury for which he sues.

*Chudson* holds that if the plaintiff's derelictions have precluded the diagnosis and treatment at a point when the person could, in fact, be saved, then the plaintiff's actions may constitute contributory negligence, immunizing the defendant from liability. However, it should be kept in mind that in *Chudson, supra,* in *Morrison v. Macnamara*, 407 A.2d 555 (D.C. App. 1979) (a last clear chance case), and in *Durphy, supra*, the issue of contributory negligence was submitted to the jury with proper instructions.

In this case, the defendant is urging the Court to find as a matter of law that Captain Burton was negligent and that Captain Burton's actions were such that they substantially contributed to Dr.

Potter's failure to diagnose and treat him.  The evidence submitted by defendant is insufficient to support such a finding.

However, even if this Court were to adopt the *Chudson* approach defendant's assertions of contributory negligence by Captain Burton should fail.  Defendant's failure to properly diagnose Captain Burton, failure to administer anti-clotting therapy, and failure to inform Captain Burton of his peril as a result of his being at high to moderate risk for pulmonary embolism were the sole causes of Captain Burton's death.[6]  Captain Burton's actions did not and could not have significantly contributed to his injuries.

First, Captain Burton cannot be held to be negligent for failing to do something he was never advised to do (and which he did not know he should do) and, second he cannot be negligent for failing to have superior medical knowledge that he did not have.  In alleging contributory negligence by Captain Burton, the defendant physicians are attempting to shift their burden of responsibility to posses and exercise superior knowledge and training to the patient, Captain Burton.

Plaintiff submits herewith the affidavits of Dr. Paul Genecin and Dr. Margaret M. Baker (*see* Exhibit 5 and Exhibit 6, respectively), both of whom aver that had Captain Burton been properly diagnosed and

---

[6] *See* Exhibit 5, Genecin Affidavit, at ¶¶ 7-15.

commenced treatment with anti-blood clotting therapy on February 7, 2003, that it is more likely than not that Captain Burton would have survived.[7]

The facts of the instant case are easily distinguishable from the facts of *Chudson v. Ratta, supra*, and the *Chudson* rational should not be adopted. First, it was conceded by the *Chudson* plaintiff that the patient Rhoda Tzemach was negligent. 548 A.2d at 172. It was further determined that Ms. Tzemach was skilled in self-examination of her breasts and that she had been instructed on numerous occasions by her physician, Dr. Ratta, of what she should look for during the examination. 548 A.2d at 174. The physician testified that she was sure that Ms. Tzemach was able to feel the cysts in her breasts and was competent to perform self-examination. *Id.*

In the instant case, however, there is no supporting evidence other than Captain Potter's statement that he *usually* advised patients of the potential risks of DVT and PE. He testified during his deposition that he did not have any specific recall of advising Captain Burton.[8] It is reasonable (and more likely than not based on his past compliance with his physicians' instructions) that had Captain Burton been advised

---

[7] *Id.; see also* Affidavit of Margaret M. Baker, M.D. (Exhibit 6), at ¶¶ 5-12.

[8] *See* Deposition of Colonel Benjamin Potter, pp. 24-28, attached hereto as Exhibit 3.

to go to the emergency room if the telltale symptoms of shortness of breath and chest pain appeared, he would have done so.

**B.**  **Captain Potter Cannot Avoid Liability Under the Doctrine of Contributory Negligence When His Actions In Failing To Advise or Failure to Properly Advise Captain Burton of the Risks and Symptoms of DVT and PE Led to Captain Burton's Alleged Inactions**

The facts in this case are similar in several aspects to *Durphy*. In *Durphy*, Mr. Durphy testified that Kaiser's doctors never discussed with him the seriousness of his condition, the results of his x-rays, the possibility that he might have osteomyelitis that required 4-6 weeks of antibiotic treatment or that he might lose his foot if the infection was not effectively treated.  These facts parallel to some degree the facts in the instant case.  According to his wife who attended all of his appointments with him,[9] Captain Burton was never advised of the peril of DVT/PE or the signs and symptoms of DVT/PE.  Additionally, there are no notations in the records that such warnings were communicated to Captain Burton or Mrs. Burton.  Captain Burton was never advised that he was at high to moderate risk for a deep vein thrombosis/ pulmonary embolism.

However, it is telling that the physicians themselves, including both Dr. Doukas,[10] the Chief of the Department of Orthopaedic

---

[9]  *See* Affidavit of Doshia Daniels Burton, attached as Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, at ¶ 10.

[10] *See* Exhibit 7, Deposition of Colonel William Doukas, at pp. 14-16 & 20-23.

Surgery at WRAMC, and Captain Potter,[11] did not recognize that Captain Burton was at high risk for developing DVT/PE although the medical literature was replete with references to persons experiencing DVT and pulmonary embolisms after being immobilized in plaster casts (*see* fn. 1, above).

In *Durphy*, Dr. Rabin, one of the defendants, testified that the standard of care required a physician to assume the burden of trying to educate the patient as to the serious nature of his injury and the treatment requirements.  Mrs. Burton, who attended all appointments when Captain Burton saw Captain Potter and other doctors at WRAMC during the period in question, testified that her husband was never advised of the peril of pulmonary embolism which he faced.[12]

The District of Columbia Court of Appeals in *Durphy* went on to hold that a jury could fairly conclude from this evidence that Mr. Durphy did not fail to exercise the degree of care that a reasonable person would take for his own safety.  Moreover, in the *Durphy* case, as in the instant case, plaintiff will submit expert testimony that had Captain Burton been properly diagnosed on February 7, 2003, no fatal pulmonary embolism would have occurred.  Moreover, in *Durphy,* the

---

[11] *See* Exhibit 1, Deposition of Captain Benjamin Potter, at p. 21.

[12] *See* Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Affidavit of Doshia Daniels Burton).

Court of Appeals held that it was error for the trial court to find as a matter of law that contributory negligence barred recovery.

The courts have almost uniformly held that there is a disparity between the knowledge and skill of a doctor and that of a patient. *See*, *for example, Simmons v. Urquhart*, 106 Md. App. 77, 664 A.2d 27 (Md. App. 1995) and *DiLeo v. Nugent*, 88 Md. App. 59, 592 A.2d 1126, *cert granted*, 325 Md. 18 (1991).  The patient is not in the position to diagnose his own ailment.  The patient does not know the risks of medications and is not in a position to judge whether the prescribed course of treatment is in his best interest.  When courts find that a person lacks the requisite knowledge or that such knowledge cannot be imputed to him, his conduct is not contributory negligence even under the *Chudson* approach.

For example, in *Santoni v. Herman H. Schaerf*, 428 A.2d 94, 48 Md. App. 498 (Md. App. 1981), the Maryland Court of Special Appeals held that it was not negligence for a patient who does not have actual or constructive knowledge of a danger to act on the assumption that he will not be exposed to danger that will come only by the breach of duty which another owes him.  He is not bound to anticipate negligent acts or omissions on the part of others unless, under the circumstances, an ordinary person would know or should know that it was not safe to make the assumption that the other party was

exercising due care.  428 A.2d 94, 100; *see also* Dobbs, <u>The Law of Torts</u>, § 200, pp. 500-502 (2000), attached hereto as Exhibit 9.

   To immunize a defendant from liability under the doctrine of contributory negligence, the injuries which occur must be foreseeable as a result of any contributory negligence on plaintiff's part.  The courts have noted the disparity in the knowledge and skill of a doctor and that of a patient.  Therefore, the patient can rely on the physician for his treatment.  Captain Potter and the other physicians caring for Captain Burton were in a far better position than Captain Burton to recognize dangers.  Physicians have access to the medical literature which showed conclusively that persons who had suffered trauma, were immobilized in casts, were over the age of 60, were on prolonged bed rest or periods of inactivity, and had increased swelling at night in the casted leg, were at high to moderate risk for pulmonary embolism.

   The United States, however, urges that Captain Burton knew or in the exercise of reasonable diligence should have known that if he had shortness of breath and pain in his chest, that he should have reported these symptoms to his physician, Captain Potter, and sought immediate medical care and that Captain Burton's failure to do so constituted negligence.  This statement, plaintiff assumes, is based upon the belief of defendant United States that most people would recognize that their life was in peril merely because they had

shortness of breath and any measure of chest pain, even if they suspected that the symptoms were caused by another source.  As discussed on page 5 of plaintiff's memorandum in opposition to defendant's motion for summary judgment, 74% of Americans are largely unaware of DVT, 57% could not name any common risk factors or pre-existing conditions that could lead to DVT, and 95% of Americans had never discussed DVT with their physicians (*see also* Exhibit 4 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment).

In addition, at all times relevant hereto, it was known that persons do not seek timely care in most instances when they experience chest pain, shortness of breath or other signs and symptoms consistent with a heart attack.  In an article entitled, "Timing is Everything:  Motivating Patients to Call 9-1-1 at Onset of Acute Myocardial Infarction" by David Faxon and Claude Lenfant, which appeared in the American Heart Association's journal, *Circulation* (2001;104;1210-1211) and is attached hereto as Exhibit 9, the authors found that the public lacked awareness about heart attack symptoms and that many chest pain patients delayed calls to 9-1-1 because they took aspirin or because they attributed their symptoms to heartburn and took an anti-acid, instead.

Therefore, defendant's supposition that Captain Burton knew that his life was in peril is not founded on any credible scientific evidence which shows what knowledge an ordinary person would have concerning the dangers associated with a DVT/PE when immobilized in a cast or what an ordinary person would do if confronted with shortness of breath and chest pain. Under *George Washington University v. Waas, supra,* the plaintiff must have actual or imputed knowledge of his peril. There is no credible evidence that Captain Burton did. Neither is there any evidence that any person of ordinary prudence would report shortness of breath and chest pain to his physician and seek treatment immediately if he reasonably believed the pain and shortness of breath were not life-threatening.

**C.    <u>A Patient Cannot Be Contributorily Negligent When He Relies on the Physician From Whom He Sought Treatment to Advise Him of Any Special Dangers Associated with the Course of Treatment and the Physician Fails To Adequately Advise Him or Fails to Advise Him at All Concerning the Signs and Symptoms of a Potentially Fatal Complication of the Course of Treatment</u>**

A person has the right to rely on the superior knowledge, skill and training of his physician from whom he seeks treatment. In this case, Captain Potter had a duty to use reasonable care to protect Captain Burton from his own fault. Dobbs' <u>The Law of Torts</u>, § 200, at pages 500-502 (attached hereto as Exhibit 9) stated that doctors may owe a duty to provide patients with material information about the

need for and risks of proposed operations.  Due to the doctor's duty and the corresponding patient's right to rely on the doctor's care, the defendant's duty determines whether the plaintiff can be charged with contributory negligence.

Defendant physicians had a duty to protect the plaintiff from his own risky conduct.  This is due to a disparity in knowledge.  Thus, it is not negligent for a patient to fail to diagnose his own illness.  *Santoni v. Schaerf, supra*, 428 A.2d 94, 100.  The patient has a right to rely on the doctor's professional knowledge and skill.  In *Halverson v. Zimmerman,* 232 N.W. 734, 739 (N.D. 1930), the court held that it would indeed take an unusual set of facts to render a person who possessed no medical skills guilty of contributory negligence because he accepts the words of his physician and trusts in the efficacy of the treatment prescribed by the physician.

Is it unreasonable for a person to assume that -- if he were at risk of a fatal condition as a result of the physician's treatment -- his physician would inform him?  Captain Burton simply was not educated to the information which he needed.  Captain Burton obviously trusted and believed in his physician and he simply was failed.

**D.** **Under the Circumstances, Defendant Has Not Borne the Burden of Proof (1) That Captain Burton Did Not Seek Help When He Experienced Shortness of Breath and Chest Pain; (2) That Any Failure on Captain Burton's Part to Seek Help or Inform Captain Potter of His Symptoms was Unreasonable; and (3) That Captain Burton Knew, or in the Exercise of Reasonable Diligence, Should Have Known that Shortness of Breath and Chest Pain Were Symptoms of Pulmonary Embolism**

Captain Burton was a man who had enjoyed good health throughout all of his life. He had never been hospitalized or disabled or put on bed rest for any long period of time. Therefore, he was unaware of the effects of a period of enforced inactivity such as the inactivity he experienced between January 10, 2003 and February 7, 2003. However, there is a strong scientific basis for the beliefs which he held. According to his wife, Captain Burton believed that the shortness of breath he experienced was caused by deconditioning due to his prolonged period of inactivity. Such a belief is well-founded in that studies have shown that persons decondition rapidly after ceasing exercise. The fact that Captain Burton was wrong in his diagnosis should not matter in that he made a reasoned judgment which a reasonable person would make under the same or similar circumstances. It is well established that patients on bed rest experience an incremental loss of muscle mass of about 1.5% per day

and substantial losses in muscular performance and cardiovascular fitness. [13]

Similarly, with respect to the pain in his chest, anyone who has been forced to walk on crutches for any period of time realizes that even if the crutches are correctly used, they often cause musculoskeletal pain. Moreover, in this particular case, it is uncontroverted that Captain Burton actually used his crutches to make a difficult trip through snow which was the deepest in the Washington/Baltimore since the 1870's.

The specific injury which Captain Burton suffered was not a heart attack or some other medical condition. It was in fact a pulmonary embolism (*see* Captain Burton's medical records, accompanying Plaintiff's Opposition to Defendant's Motion for Summary Judgment as Exhibit 1). Captain Burton was entitled to receive from defendant information and education which would enable him to recognize and act promptly to preserve his life. It would create a terrible precedent if in fact a defendant could violate his duty to educate the patient that his life is in peril of DVT/PE and then escape liability because the patient did not appreciate the peril or know of the need to look out for the life-threatening symptoms. Captain Burton's assumptions that his

---

[13] *See* "Formulation of the Exercise Prescription," contained in section 3 of Chapter 31 of the Merck Manual of Geriatrics, attached hereto as Exhibit 10.

shortness of breath was caused by deconditioning and that his chest

pain was caused by over-exertion were reasonable.

Thus, any negligence on Captain Burton's part was a direct result

of, and not in addition to, defendant's negligence; that is, defendant

actually caused Captain Burton to be uneducated and to lack the

requisite knowledge concerning the perils of pulmonary embolism.

Captain Burton should bear no culpability and was not negligent.

Therefore, the defense of contributory negligence should not be made

available to the United States as Captain Burton's actions were not a

substantial factor in causing his death.  His death was caused totally

by Captain Potter's derelictions.  *See* Affidavit of Paul Genecin, M.D.,

¶¶ 14-15, attached hereto as Exhibit 5.

> 1.  <u>Defendant's Proofs That Captain Burton Was Negligent
> By Not Seeking Help When He Experienced Shortness of
> Breath and Chest Pain are Insufficient and Unsupported
> Because There is Evidence That Captain Burton Apparently
> Tried to Contact Captain Potter</u>

After discovery was completed, defendant in its Statement of

Uncontroverted Facts accompanying its Motion for Summary Judgment

wrote that Captain Burton called Captain Potter on the day before he

died, seeking to advance his appointment to the 21st of February,

2003.  Prior to learning of this statement, plaintiff had no information

that such a contact had been initiated by Captain Burton.  If in fact

Captain Burton spoke with Captain Potter and gave him any

information, Captain Potter cannot use any conversation with Captain Burton, a person who is now dead, as a basis of a claim against his estate under the District of Columbia's Dead Man's Statute, D.C. Code § 14-302.  If Captain Burton attempted to speak with Captain Potter but was unable to do so, this evidence when viewed in a light most favorable to the plaintiff, infers that Captain Burton sought treatment at an earlier time than his scheduled appointment, February 25, 2003. Mrs. Burton was not present during this alleged contact and has no knowledge of the content of any telephone conversation or with whom it occurred.

Notwithstanding Mrs. Burton's lack of knowledge of a telephone conversation there are several possible scenarios which raise factual questions which should defeat defendant's Motion for Summary Judgment on causation:  First, Captain Burton may have been successful in reaching Captain Potter; second, Captain Burton may not have reached Captain Potter but left him a message that he wished to move his appointment from the 25th to the 21st; or, third, Captain Burton may have been unsuccessful in reaching Captain Potter and Captain Potter did not return Captain Burton's telephone call of February 19, 2003.

In short, defendant has produced insufficient evidence that

Captain Burton did not attempt to contact Captain Potter or that he did

not seek help or advise anyone at WRAMC of his symptoms.

2.    If Captain Burton Failed to Inform Dr. Potter of His
      Symptoms, It was the Result of Captain Burton's Good
      Faith Belief That His Shortness of Breath Was Caused by
      Detraining and the Chest Pain Was Caused by Over-
      Exertion

Defendant also failed to carry its burden of proving that any

failure on Captain Burton's part to seek help or to inform Captain

Potter of his symptoms was unreasonable.  Mrs. Burton testified in her

deposition and in her affidavit that Captain Burton believed that his

shortness of breath was caused by deconditioning.  He had no prior

experience with periods of inactivity and had no idea that the

shortness of breath could be evidence of an impending pulmonary

embolism.  Captain Burton, an avid exerciser, attributed his shortness

of breath to deconditioning or detraining and it is generally known that

if one does not exercise for a substantial period of time, one becomes

winded very easily.  This was not an unreasonable assumption by

Captain Burton and in fact this information has been often documented

and described in the body of medical literature.

Similarly, Captain Burton was both logical and reasonable in

believing that the chest pain he experienced was a result of walking on

crutches through deep snow.  Taking ibuprofen is what many people

do when confronted with musculoskeletal pain suspected to be caused by over-exertion.  Moreover, as described by Dr. Genecin, a person who has a pulmonary embolism or who is in the incipient stages of forming a pulmonary embolism often has impaired oxygen levels in their blood and brain, making it difficult for them to make reasoned executive decisions.[14]

People (of all educational levels) who have no medical training make judgments based upon their life experiences.  If Captain Burton's judgments about his cause of pain were not medically sound it does necessarily imply negligence.  It is not negligence for a non-medically trained person such as Captain Burton to take precautions based upon their fund of knowledge, which in this case was deficient due to the defendant Potter's failure to properly educate him.  Therefore, any failure on Captain Burton's part to immediately seek emergent care for his shortness of breath or pains in his chest does not instinctively mean that he was negligent, especially when one considers the other logical causes for his failure to seek help on an emergent basis.

---

[14] *See* Genecin Affidavit (Exhibit 5), at ¶ 14.

3.    <u>Defendant Has Failed to Bear the Burden of Proving that Captain Burton Knew, or in the Exercise of Reasonable Diligence, Should Have Known that Shortness of Breath and Chest Pain were Symptoms of a Heart Attack or Other Life-Threatening Conditions</u>

The United States Centers for Disease Control and the American Public Health Association conducted a survey in which they interviewed laypersons to determine whether they knew the signs and symptoms of DVT, the precursor of a pulmonary embolism, or if they knew any of the risk factors associated with the development of DVT (*see* Exhibit 4 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment).  While there are awareness programs today, as of the year 2003 there was a paucity of information given directly to the lay community concerning the signs and symptoms of DVT and PE and alerting them to the fact that certain conditions would put them at risk for pulmonary embolism which could be fatal.

On the other hand, as a physician, Captain Potter had a duty to keep up with the state of the medical art and other developments in the field of medicine.  At his deposition, Captain Potter stated that he did not believe that Captain Burton was at high to moderate risk for pulmonary embolism and that the only DVT/PE risk factor he was aware Captain Burton had was that he was casted (*see* Exhibit 3, p. 21).

Moreover, Captain Potter's supervisor, Colonel Doukas, would not agree that Captain Burton was at high risk for DVT/PE (*see* Exhibit 7). Moreover, defendant's expert, W. Hodges Davis, M.D., did not believe that Captain Burton was at high risk for a pulmonary embolism and testified that people who have prolonged immobilization in a cast are not at risk for deep vein thrombosis or pulmonary embolism.[15] In view of these physicians' incorrect beliefs, it stretches credulity to believe that Captain Potter advised Captain Burton of his peril.

The medical literature is at odds with the defendant physicians' beliefs. While on the other hand, plaintiff's experts' opinions are supported by the medical literature.

Defendant has also failed to bear its burden for proving that Captain Burton knew, or in the exercise of reasonable diligence, should have known that shortness of breath and chest pain were symptoms of a life-threatening condition. Defendant merely makes the assertion, unsupported by literature or any surveys which show what an average person knew about shortness of breath and chest pain as symptoms of pulmonary embolism or a heart attack. Defendant also has not adduced evidence that all shortness of breath episodes and all chest pain require reporting to their physicians or that they seek immediate treatment.

---

[15] *See* Exhibit 11, Deposition of W. Hodges Davis, M.D., at p. 20.

There are many reasons why people delay in seeking treatment for serious medical conditions such as heart attacks.  As set forth in Exhibit 9 hereto, the article from _Circulation_, the journal of the American Hearth Association, describes that most people are unaware of the subtle symptoms of a heart attack, such as shortness of breath. Only half of the persons surveyed knew that shortness of breath was a symptom of a heart attack.  Most people could identify only three of eleven heart attack symptoms (Exhibit 9, p. 1210).

Moreover, it should be remembered that Captain Burton's shortness of breath and chest pain episodes occurred around the period of the "snow storm of the century" in which in excess of 20 inches of snow blanketed the area where Captain Burton lived.  Yet defendant alleges that Captain Burton was negligent for not reporting his symptoms or seeking medical treatment.  There is no evidence that he knew his life was in danger.  How, then, could he be negligent in failing to report or failing to seek emergent medical assistance?

Therefore, defendant has failed to carry its burden of showing that Captain Burton was negligent and in the absence of a finding that he was negligent, any derelictions on his part cannot form the basis of a finding of contributory negligence.

# V.  **CONCLUSION**

Defendant has moved for judgment as a matter of law that Captain Burton was contributorily negligence.  Such determinations are for the finder of fact after a full hearing in which both sides may present their case.  It is notable, however, that *Durphy*, *Waas* and *Chudson* are all cases where the issue of contributory negligence was submitted to a jury.  In order to be entitled to summary judgment as a matter of law on the causation issue, the evidence must be overwhelmingly in the defendant's favor.  In this case, it is not.

Even if proper treatment up until the day of his death could have prevented Captain Burton's death, he was not at fault for not reporting the shortness of breath and chest pain, nor was his lack of knowledge of the perils of DVT/PE his fault.  It was totally the fault of his physician, Dr. Potter.

For the reasons cited herein, this is not an appropriate case for awarding summary judgment for contributory negligence and plaintiff prays that the defendant's motion for summary judgment be denied.

Respectfully submitted,

THE EATON LAW FIRM, PLLC


By:_____
    ALLEN T. EATON
    LA'VERN D. WILEY

31

1111 – 14th Street, NW
Suite 777
Washington, DC  20005
(202) 789-0088

Counsel for Plaintiff